**24-50630**

IN THE

# United States Court of Appeals

## FOR THE FIFTH CIRCUIT

◆◆◆

PAUL RUSESABAGINA; TACIANA MUKANGAMIJE; ANAISE UMUBYEYI
KANIMBA; AIMEE-LYS RUSESABAGINA; AIME-DIANE RUSESABAGINA;
TRESOR RUSESABAGINA; ROGER RUSESABAGINA; CARINE IZERE KANIMBA,

*Plaintiffs-Appellants,*

—v.—

GAINJET AVIATION, S.A.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

## BRIEF FOR DEFENDANT-APPELLEE

PAMELA C. HICKS
HICKS DAVIS WYNN, PC
3555 Timmons Lane, Suite 1000
Houston, Texas 77027
(713) 589-2240

ANDREW J. HARAKAS
DAVID F. KNAPP
CLYDE & CO US LLP
405 Lexington Avenue
New York, New York 10174
(212) 710-3900

*Attorneys for Defendant-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.  *See* 5th Cir. R. 28.2.1. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

***Plaintiffs-Appellants Related:***

- Paul Rusesabagina – Plaintiff-Appellant

- Taciana Mukangamije – Plaintiff-Appellant

- Anaise Umubyeyi Kanimba – Plaintiff-Appellant

- Aimee-Lys Rusesabagina – Plaintiff-Appellant

- Carine Isere Kanimba – Plaintiff-Appellant

- Aime-Diane Rusesabagina – Plaintiff-Appellant

- Tresor Rusesabagina – Plaintiff-Appellant

- Roger Rusesabagina – Plaintiff-Appellant

- Steve Shadowen, Counsel for Plaintiffs

- Tina Miranda, Counsel for Plaintiffs

- Nicholas Shadowen, Counsel for Plaintiffs

- Marion Reilly, Counsel for Plaintiffs

***Defendant-Appellee Related:***

- GainJet Aviation, S.A., Defendant-Appellee

- Andrew J. Harakas, Clyde & Co US LLP, Counsel for Defendant-Appellee

- David F. Knapp, Clyde & Co US LLP, Counsel for Defendant-Appellee

- Pamela C. Hicks, Hicks Davis Wynn, PC, Counsel for Defendant-Appellee

- Fouad Alghanim & Sons Group of Companies, parent company of Defendant-Appellee GainJet Aviation, S.A.

Defendant-Appellee GainJet Aviation, S.A. ("GainJet") states that Fouad Alghanim & Sons Group of Companies is the parent company of GainJet Aviation, S.A. No publicly held company owns 10% or more of GainJet.

/s/ Andrew J. Harakas

Andrew J. Harakas
*Clyde & Co US LLP*
405 Lexington Avenue
New York, New York, 10174
Phone: (212) 710-3920

*Counsel for Defendant-Appellee*
*GainJet Aviation, S.A.*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee GainJet Aviation, S.A. respectfully requests oral argument to aid the Court in its decisional process. 5th Cir. R. 28.2.3.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF AUTHORITIES .................................................................................. vii

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ...............................2

STATEMENT OF THE CASE................................................................................3

    A.    Nature Of The Case................................................................................3

    B.    Relevant Procedural History And Disposition In The District Court.................................................................................................3

        1.    GainJet's Motion To Dismiss ......................................................5

        2.    Grant Of Jurisdictional Discovery And Denial Of Motion To Compel ..............................................................6

        3.    Denial Of Plaintiffs' Motion To Transfer Venue ......................9

        4.    Grant Of GainJet's Motion To Dismiss By The District Court..........................................................................12

    C.    Statement Of Relevant Facts ...............................................................13

        1.    The Plaintiffs.............................................................................13

        2.    GainJet ......................................................................................14

        3.    The Alleged Conspiracy Was Orchestrated by Rwanda, Not GainJet .....................................................................16

        4.    The Charter Flight Booking .......................................................17

        5.    GainJet Had No Knowledge Of Or Role In the Alleged Conspiracy.................................................................19

SUMMARY OF ARGUMENT ............................................................23

ARGUMENT .................................................................................25

I      STANDARD OF REVIEW ..................................................25

II     THE DISTRICT COURT CORRECTLY CONCLUDED THAT GAINJET LACKS SUFFICIENT "MINIMUM CONTACTS" WITH TEXAS FOR THE EXERCISE OF SPECIFIC JURISDICTION.................................................................26

     A.     GainJet Did Not Purposefully Direct Any Activities At Texas ...........................................................................28

     B.     Plaintiffs' Claims Against GainJet Did Not Arise Out Of Or Relate From Any GainJet Contacts With Texas.......................30

     C.     Exercising Jurisdiction Over GainJet In Texas Is Unreasonable ...........................................................31

III    THE DISTRICT COURT CORRECTLY FOUND THAT *CALDER* DOES NOT ESTABLISH SPECIFIC PERSONAL JURISDICTION OVER GAINJET ......................................33

     A.     Plaintiffs' Theory Of The Case Cannot Be Reconciled With *Walden* ...........................................................33

     B.     The *Calder* "Effects" Does Not Create Specific Jurisdiction Over GainJet ...........................................................35

     C.     *Ford Motor* and *Guidry* Do Not Support Jurisdiction..............38

IV    THE DISTRICT COURT CORRECTLY REJECTED JURISDICTION OVER GAINJET BASED ON THE THEORY OF CONSPIRACY JURISDICTION ..................................40

     A.     Conspiracy Jurisdiction Is Not Viable In The Fifth Circuit.................................................................40

     B.     Plaintiffs Cannot Establish Conspiracy Jurisdiction Over The Alleged Co-Conspirators ...........................................44

V      EVEN IF THIS COURT FINDS PERSONAL JURISDICTION OVER GAINJET, SUBJECT MATTER JURISDICTION DOES NOT EXIST ............................................................................47

CONCLUSION .......................................................................................50

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abascal v. U.S.*,
  2012 WL 5425761 (C.D. Cal. Sept. 25, 2012), *report and recommendation adopted,* 2012 WL 5289863 (C.D. Cal. Oct. 24, 2012) ...................................................................................47

*Allred v. Moore & Peterson*,
  117 F.3d 278 (5th Cir. 1997) ...............................................37

*Alpine View Co. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ...............................................25

*Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*,
  115 F. App'x 662 (5th Cir. 2004)....................................45, 46

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017) .........................................30, 31

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..............................................................41

*Calder v. Jones*,
  465 U.S. 783 (1984)........................................................*passim*

*Carmona v. Leo Ship Mgmt., Inc.*,
  924 F.3d 190 (5th Cir. 2019) ...............................................27

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
  322 F.3d 376 (5th Cir. 2003) ...............................................25

*Chow v. United States*,
  2021 WL 3438365 (5th Cir. 2021) ..................................41, 43

*Delta Brands, Inc. v. Danieli Corp.*,
  99 F. App'x 1 (5th Cir. 2004) .........................12, 41, 42, 44

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*,
  246 F. Supp. 3d 52 (D.D.C. 2017), *aff'd,* 894 F.3d 339 (D.C. Cir. 2018) ..................................................................................46

*Fed'n of State Massage Therapy Boards v. Mendez Master Training Ctr., Inc.*, 2018 WL 534540 (S.D. Tex. Jan. 24, 2018) ..................................41

*Fielding v. Hubert Burda Media, Inc.*,
415 F.3d 419 (5th Cir. 2005) ...................................................................38

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ...........................................................................*passim*

*Fountain v. Thaler*,
2015 WL 5168775 (E.D. Tex. Sept. 2, 2015)....................................47

*Guidry v. U.S. Tobacco Co., Inc.*,
188 F.3d 619 (5th Cir. 1999) ...........................................................*passim*

*Hanson v. Denckla*,
357 U.S. 235 (1958)..................................................................................28

*In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242 (2d Cir. 2023), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*,
144 S. Ct. 681 (2024).................................................................................44

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..................................................................................26

*Internacional Realty v. Ferrari*,
2008 WL 938554 (W.D. Tex. April 4, 2008)..............................41, 42

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018).............................................................................49

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018).............................................................................49

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)..................................................................................26

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013)..................................................................................49

*Macias v. Cunningham*,
2015 WL 3774312 (W.D. Tex. June 11, 2015).................................49

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
  481 F.3d 309 (5th Cir. 2007) ...................................................37, 28

*Mullins v. TestAmerica, Inc.*,
  564 F.3d 386 (5th Cir. 2009) ...............................................37

*Nat'l Industri Sand Ass'n v. Gibson*,
  897 S.W.2d 769 (Tex. 1995) ..............................................42

*Paolino v. Argyll Equities, LLC*,
  401 F. Supp. 2d 712 (W.D. Tex. 2005) ..............................42

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999)........................................................13, 47

*Rusesabagina v. GainJet Aviation S.A*,
  2023 WL 4853402 (W.D. Tex. July 28, 2023).......................12

*Rusesabagina v. Republic of Rwanda*,
  652 F. Supp. 3d 1 (D.D.C. 2023)........................................10

*Rusesabagina v. Republic of Rwanda*,
  2023 WL 2562692 (D.D.C. Mar. 16, 2023)..........................11

*Rusesabagina v. Republic of Rwanda*,
  2023 WL 3029734 (D.C. Cir. Apr. 14 2023) ........................11

*Rush v. Savchuk*,
  444 U.S. 320 (1980)........................................................27, 42

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018) ............................................*passim*

*Sosa v. Alvarez-Machin*
  542 U.S. 692 (2004)........................................................49

*Stroman Realty, Inc. v. Wercisnki*,
  513 F.3d 476 (5th Cir. 2008) ...........................................37

*Tagger v. Strauss Grp. Ltd.*,
  951 F.3d 124 (2d Cir. 2020) ............................................48

*Thomas v. Kadish*,
748 F.2d 276 (5th Cir. 1984) ...............................................................43

*Walden v. Fiore*,
571 U.S. 277 (2014)...........................................................................*passim*

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)...............................................................................32

*WorldVentures Holdings, LLC v. Mavie*,
2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ............................41, 43

*Zermeno v. McDonnell Douglas Corp.*,
246 F. Supp. 2d 646 (S.D. Tex. 2003) ................................................48

**Constitution, Statutes, Treaties and Rules**

U.S. Const. amend. V ...............................................................................41

U.S. Const. amend. XIV, §1 ....................................................................41

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331........................................................................1, 13, 47

28 U.S.C. § 1332..................................................................1, 13, 47, 48

28 U.S.C. § 1332(a)(2), and (c) .........................................................47, 48

Convention for the Unification of Certain Rules for International Carriage by Air,
May 28, 1999, ICAO Doc. 9740, *reprinted in* S. Treaty Doc. No. 106-45, 1999
WL 33292734 (the "Montreal Convention")................................. *passim*

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or
Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 113
("CAT"), ...................................................................... 5, 13, 47, 48

International Covenant on Civil and Political Rights,  Dec. 19, 1966, S. Treaty
Doc. No. 95–20, 999 U. N. T. S. 171  ("ICCPR") ......................... 4, 5, 13, 47, 48

Alien Tort Statute, 28 U.S.C. § 1350...............................1, 4, 5, 13, 47, 49

Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 (note)........................4

Fed. R. Civ. P. 4(d) ...................................................................4n

Fed. R. Civ. P. 4(k)(2) .......................................................10, 32n

Fed. R. Civ. P. 30(b)(6) ............................................................7

Fed. R. Civ. P. 30(c)(2) ............................................................7

5th Cir. R. 28.2.1 .......................................................................i

5th Cir. R. 28.2.3 ..................................................................... iii

**Other Authorities**

Universal Declaration of Human Rights, G.A. Res. 217A (III), U.N. Doc. A/810 (1948) ("UDHR") ......................................................16

18C Fed. Proc., L. Ed. § 45:2229..........................................48

# JURISDICTIONAL STATEMENT

***Jurisdiction of the District Court.*** The jurisdiction of the District Court was based upon 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1350 but was lacking. *See infra*, Point V.

***Jurisdiction of the Court of Appeals.*** The jurisdiction of this Court is based on 28 U.S.C. § 1291. By Order dated June 27, 2024, the District Court granted Defendant-Appellee's Motion to Dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction and a Final Judgment was entered on June 27, 2024. ROA. 1147-60.

Plaintiffs-Appellants timely filed a Notice of Appeal on July 26, 2024. ROA. 1162.

**STATEMENT OF THE ISSUE PRESENTED FOR REVIEW**

Whether the District Court correctly concluded that Defendant-Appellee GainJet Aviation, S.A. was not subject to specific personal jurisdiction in Texas, as GainJet is a Greek air charter operator with no presence in or connections to Texas that arise out of or relate to this action.

## STATEMENT OF THE CASE

### A.     Nature Of The Case

Plaintiffs-Appellants ("Plaintiffs") filed this action against Defendant-Appellee GainJet Aviation, S.A. ("GainJet"), alleging its complicity in an international conspiracy—perpetrated by the Rwandan government—to extradite Paul Rusesabagina ("Mr. Rusesabagina") from his home in Texas and unlawfully detain him in Rwanda. ROA.6.  GainJet, a Greek private jet operator with no connection to Texas, flew Mr. Rusesabagina on the last leg of his trip from Dubai to Rwanda.  The District Court found "no reason to believe" that GainJet "had any role in convincing Mr. Rusesabagina to leave the United States" and "no evidence" that GainJet "ever contacted Mr. Rusesabagina" or "had any other contact with Texas or the United States in furtherance of the conspiracy." ROA.1157-61.  The District Court likewise held that the Fifth Circuit "does not recognize" conspiracy jurisdiction and in any event, Mr. Rusesabagina's alleged injuries "were suffered in Rwanda, not Texas." ROA.1155-1157.  The District Court thus concluded that GainJet was not subject to personal jurisdiction in Texas.

### B.     Relevant Procedural History And Disposition In The District Court

On December 14, 2020, Plaintiffs filed their Original Complaint against GainJet and Bishop Constantin Niyomwungere ("Niyomwungere") seeking to recover damages for the alleged extradition, detention and torture of Mr.

Rusesabagina arising from a GainJet-operated charter flight from Dubai, United Arab Emirates ("UAE") to Kigali, Rwanda on August 27, 2020.  ROA.23.[1]

Plaintiffs alleged Mr. Rusesabagina was deceived into boarding the flight in Dubai to Rwanda, detained during the flight, and arrested upon arrival in Rwanda. ROA.26-27 ; ROA.198-99. The Original Complaint asserted eight claims: three claims against Niyomwungere for violations of the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS") and Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 (note), and five claims against both Niyomwungere and GainJet for civil conspiracy, fraud, false imprisonment, intentional infliction of severe emotional distress and violations of international law.  ROA.20-21.

Plaintiffs never attempted to serve and voluntarily dismissed their claims against Niyomwungere based on the belief that he resided in Burundi, a non-signatory to the Hague Service Convention. ROA.113-117.  Thereafter, Plaintiffs filed an Amended Complaint against GainJet on November 15, 2021, asserting six claims against GainJet: (1) civil conspiracy; (2) fraud; (3) false imprisonment; (4) assault and battery; (5) intentional infliction of severe emotional distress; and (6) violations of international law, identifying claims and/or subject matter jurisdiction based upon the International Covenant on Civil and Political Rights,  Dec. 19, 1966,

---

[1]     The Original Complaint, without a summons, was served pursuant to the Hague Service Convention upon GainJet at its headquarters in Athens, Greece on July 12, 2021.  Plaintiffs subsequently obtained a summons, and GainJet waived formal service of the summons pursuant to Fed. R. Civ. P. 4(d) on August 26, 2021.  ROA.8; ROA.176-79.

S. Treaty Doc. No. 95–20, 999 U. N. T. S. 171 ("ICCPR"), the Convention Against Torture, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 113 ("CAT"), the ATS and the Universal Declaration of Human Rights ("UDHR"), G.A. Res. 217A (III), U.N. Doc. A/810 (1948). ROA.192-275. The Amended Complaint sought compensatory and exemplary damages. ROA.272-74.[2]

### 1. GainJet's Motion To Dismiss

In November 2021, GainJet moved to dismiss the Amended Complaint based on lack of subject matter jurisdiction and lack of personal jurisdiction. As to subject matter jurisdiction, GainJet argued that this case is governed by an international treaty of the United States known as the Montreal Convention[3], which precludes Plaintiffs' claims from being brought in the U.S. ROA.277-96. Even if the Convention did not apply, dismissal was warranted because the District Court still lacked federal question jurisdiction under the ICCPR, and ATS, and diversity jurisdiction was absent because there are aliens on both sides of the controversy—

---

[2]    While the Amended Complaint (at ¶17) states that it also sought "injunctive relief," it does not set forth the basis for or nature of this request. ROA.272-75.

[3]    Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (the "Montreal Convention"). The Montreal Convention governs air carrier liability for passenger injury and Article 33 sets forth five fora where an action may be brought—here, GainJet argued that the U.S. is not one of those fora and, therefore, the District Court lacked treaty subject matter jurisdiction. *See* ROA.290-96.

Plaintiffs are foreign and U.S. citizens and defendant GainJet is a foreign citizen. ROA.296-99.

As to personal jurisdiction, GainJet argued that it was not subject to personal jurisdiction since there are no "minimum contacts" with Texas arising out of or related to this action; any attempt to hale GainJet into a Texas court through an alleged co-conspirator's contacts with Texas fails in light of clear Fifth Circuit and Texas Supreme Court precedent; and, in any event, Plaintiffs could not satisfy the requirements for conspiracy jurisdiction. ROA.299-301.

### 2. *Grant Of Jurisdictional Discovery And Denial Of Motion To Compel*

In response to GainJet's motion to dismiss, Plaintiffs moved for leave to conduct jurisdictional discovery in four specific areas: (1) "the extent to which GainJet purposefully directed its activities to Texas through its internet presence, advertisement, and services"; (2) "the extent of GainJet's commercial agreements with airport(s) in Texas"; (3) "the extent and content of GainJet's communications with the Rwandan Government, Constantin Niyumwongere [sic], or others related to the scheme to target and abduct Mr. Rusesabagina from Texas"; and (4) "the extent and content of GainJet's communications, including e-mails and telephone calls, with its coconspirators or others in Texas." ROA.489-93; ROA.1179-80.

At a hearing on February 24, 2022, the District Court granted ninety 90 days of "very limited jurisdictional discovery." ROA.1183. The Court stated that jurisdictional discovery on specific jurisdiction was limited to:

> the sole issue with regard to this specific flight that when Mr. Rusesabagina was invited did GainJet know about that initial invitation; did GainJet have anything to do from getting to San Antonio, Texas to Dubai; what, if anything, the Rwandan government gave to GainJet with regard to the Dubai charter, all those kind of limited things I'll grant you to see if it can establish specific jurisdiction in Texas.
>
> Otherwise the remainder of the items you seek are trying to establish general jurisdiction and that's not going to be enough.

ROA.1183-84.

GainJet responded to Plaintiffs' interrogatories and request for production of documents and produced GainJet's CEO Captain Ramsey Khdair for a deposition pursuant to Fed. R. Civ. P. 30(b)(6), in Athens, Greece on April 15, 2022. ROA.846. Captain Khdair was well-prepared for his deposition and, while he answered all questions even remotely related to the issue of specific jurisdiction[4], pursuant to Fed. R. Civ. P. 30(c)(2), GainJet's counsel instructed Captain Khdair not to answer questions clearly exceeding the Court's limitation on Plaintiffs' jurisdictional discovery. ROA.847.

---

[4]    In light of the Court's order limiting discovery to a Rule 30(b)(6) deposition "on the issue of just specific jurisdiction here in Texas" (ROA.1183-84.), Captain Khdair had no need to prepare to answer questions outside the scope of this jurisdictional issue, such as whether there was "foul play" during the flight from Dubai, UAE to Kigali, Rwanda. ROA.847.

After Captain Khdair's deposition, Plaintiffs served additional discovery requests, to which GainJet timely responded and in May 2022, the Court below granted Plaintiffs' unopposed motion to extend jurisdictional discovery until June 24, 2022. ROA.848.

On June 10, 2022, shortly before the expiration of the extended discovery deadline, Plaintiffs moved for leave to compel the re-deposition of Captain Khdair and to depose additional[5] GainJet employees to answer questions as to GainJet's role in the conspiracy to kidnap Mr. Rusesabagina before, during, and after the flight. ROA.619-630.

In November 2022, the District Court denied Plaintiffs' motion because the discovery sought did not relate to the issue of specific jurisdiction and the motion was "premised on this faulty 'conspiracy theory' of personal jurisdiction," which has been rejected by the Fifth Circuit and the Texas Supreme Court. ROA.843-56. The proposed questions, the Court explained, were "directed to GainJet employees' awareness of the conspiracy rather than their purposeful contacts with the state of Texas." ROA.855. The District Court correctly found:

> Captain Khdair answered all questions regarding potential contacts with the State of Texas—communications that GainJet had with Mr. Rusesabagina, Niyomwungere, and the Rwandan government in advance of the flight. Khdair spoke with GainJet's Ground Operations Manager, who was directly involved in the booking of the flight at issue

---

[5] At the jurisdictional discovery hearing, the District Court expressly rejected the need for depositions of the GainJet cabin crewmembers. ROA.1186-87.

and first received Mr. Rusesabagina's information from the Rwandan government. Although the mobile phone used in communicating with the Rwandan government was damaged, GainJet sought and produced phone records and WhatsApp messages with information sent by the Rwandan government to GainJet and records kept for GainJet accounts involved in the flight's booking. While the Court is sympathetic to Plaintiffs' desire to learn more about the conspiracy generally, such inquiries are beyond the scope of the limited jurisdictional discovery that was authorized.

ROA.855.

Although the District Court denied Plaintiffs' motion to conduct additional jurisdictional discovery, it granted the parties leave to file supplemental briefing on GainJet's motion to dismiss based on the discovery that had been accomplished. The District Court, however, cautioned Plaintiffs that "to the extent any such supplemental briefing is premised on the theory that GainJet is subject to personal jurisdiction as member of a conspiracy directed at a Texas resident, it is unlikely to cure the jurisdictional deficiencies in the Amended Complaint." ROA.856. Both parties filed additional briefing. *See* ROA.861-883; ROA.895-909.

### 3. *Denial Of Plaintiffs' Motion To Transfer Venue*

Unbeknownst to the District Court, Plaintiffs had filed a *separate action* in February 2022 in the United States District Court for the District of Columbia against the actual perpetrators of the "international kidnapping" conspiracy—the Republic of Rwanda, President Kagame, and three Rwandan officials. ROA.910. (*see Rusesabagina v. Republic of Rwanda*, *et. al.*, No. 22-469 (RJL) (D.D.C. original

complaint filed Feb. 22, 2022) ("D.D.C. Action").[6]  *GainJet was not named in the action.*

In the D.D.C. Action, Plaintiffs made nearly identical claims stemming from the alleged kidnapping and asserted that the "crux of the conspiracy" was the agreement between Niyomwungere and the Rwandan Intelligence Bureau to lure Mr. Rusesabagina "from Texas to Dubai, from whence he could be tricked into flying to Rwanda." *Rusesabagina v. Republic of Rwanda*, 652 F. Supp. 3d 1, 8 (D.D.C. 2023).  No mention was made of any "false flight information" provided by GainJet being the "lynchpin" of the conspiracy, as Plaintiffs allege in this appeal. Plaintiffs also took the position that the alleged participants in the conspiracy "were not subject to personal jurisdiction elsewhere in the United States" other than D.C. ROA.968.

On January 23, 2023, the D.D.C. Court dismissed the claims against Rwanda and President Kagame as barred by the doctrines of sovereign immunity and head of state, respectively.  *Rusesabagina v. Republic of Rwanda*, 652 F. Supp. 3d at 10. Later, on March 16, 2023, the D.D.C. Court found most of the claims against the remaining Rwandan officials were barred by the act of state doctrine, but personal jurisdiction was proper under Fed. R. Civ. P. 4(k)(2) even though the alleged harmful

---

6    Remarkably, Plaintiffs did not alert the District Court of the D.D.C. Action and dismissal order.  Once GainJet's counsel learned of the case and orders independently, they brought them to the Court's attention on February 8, 2023, and March 21, 2023.  *See* ROA.895-909; ROA.910.

conduct occurred outside the forum and there was not a sufficient "nexus" to D.C. *Rusesabagina v. Republic of Rwanda*, 2023 WL 2562692, at *6-*8 (D.D.C. Mar. 16, 2023). The Rwandan officials filed an interlocutory appeal to the D.C. Circuit on March 30, 2023 (*see* D.D.C. Action (ECF No. 46)), but a Stipulation of Dismissal was filed the next day. D.D.C. Action (ECF No. 48). Plaintiffs dismissed the D.D.C. action in exchange for Mr. Rusesabagina's release and return. In light of the Stipulation of Dismissal, the appeal was dismissed on April 14, 2023. *See Rusesabagina v. Republic of Rwanda*, No. 23-7039, 2023 WL 3029734 (D.C. Cir. App. 14, 2023).

Despite the dismissal of the D.D.C. Action, on May 18, 2023, Plaintiffs moved to transfer this case to the District of Columbia. Plaintiffs claimed that the District of Columbia was a more convenient forum because of the ongoing D.D.C. Action (which Plaintiffs failed to disclose had been dismissed) and because "essential witnesses" (*i.e.*, the Rwandan officials) were already subject to jurisdiction in the D.D.C. Action. ROA.927. On July 28, 2023, the Court below denied the motion to transfer finding that "there is no reason to believe that GainJet itself had any role in convincing Mr. Rusesabagina to leave the United States" and concluded that Plaintiffs had failed to establish that the District of Columbia would be a more convenient forum for litigating their claims than the Western District of Texas, especially in light of the dismissal of the D.D.C. Action. *See Rusesabagina*

*v. GainJet Aviation S.A.*, 2023 WL 4853402, at \*6–7 (W.D. Tex. July 28, 2023);
ROA.854.

### 4. *Grant Of GainJet's Motion To Dismiss By The District Court*

On June 27, 2024, the District Court correctly granted GainJet's motion to
dismiss for lack of personal jurisdiction.  ROA.1147.  Noting that the "Fifth
Circuit…does not recognize a 'conspiracy theory' of personal jurisdiction" (citing
*Delta Brands, Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004)), the District
Court correctly stated that to establish personal jurisdiction Plaintiffs had to show
the "conspiracy related to or arose out of" GainJet's "purposeful contacts" with
Texas.  ROA.1155.  The District Court found no such showing could be made, given
that there is "no reason to believe" that GainJet "had any role in convincing Mr.
Rusesabagina to leave the United States" and "no evidence" that GainJet "ever
contacted Mr. Rusesabagina" or "had any other contact with Texas or the United
States in furtherance of the conspiracy." ROA.1157.  The District Court correctly
recognized that GainJet's alleged misrepresentation to Mr. Rusesabagina of the
flight's destination would only have been in Dubai which

> is not a contact with Texas or the United States, but with a person who
> happens to reside there. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).
> This is insufficient to establish a purposeful contact with Texas or the
> United States."

ROA.1158.

12

Finding that Mr. Rusesabagina's alleged injuries "were suffered in Rwanda, not Texas," the District Court correctly concluded that Plaintiffs "could not establish jurisdiction over GainJet in Texas based on allegations of harm…suffered after he left Texas." ROA.1159. The District Court thus properly granted GainJet's motion to dismiss Plaintiff's Amended Complaint for lack of jurisdiction. ROA.1160.

As the District Court determined that it lacked personal jurisdiction over GainJet, it did not reach GainJet's other arguments that subject matter jurisdiction did not exist pursuant to (a) Article 33 of the Montreal Convention, (b) 28 U.S.C. § 1331, because Plaintiffs lack any right of recovery under ICCPR or the CAT, (c) 28 U.S.C. § 1350, because the ATS does not apply to claims against foreign corporations, such as GainJet, or (d) 28 U.S.C. § 1331 for lack of diversity jurisdiction. ROA.1153-60.[7]

This appeal followed.

## C.    Statement Of Relevant Facts

### 1. *The Plaintiffs*

Plaintiffs are Mr. Rusesabagina, his wife Taciana Mukangamije ("Ms. Mukangamije"), and his children. ROA.192. Mr. Rusesabagina is known for

---

[7]    When facing multiple grounds for dismissal, as here, it is in the court's discretion to determine whether to address the question of subject matter or personal jurisdiction first. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 588 (1999).

sheltering refugees during the Rwandan genocide and as a critic of Rwandan President Kagame.  Plaintiffs allege:

- Mr. Rusesabagina and Ms. Mukangamije are Belgian citizens/U.S. permanent residents "dividing their time" between Belgium and Texas;

- Aimee-Lys Rusesabagina and Aimee-Diane Rusesabagina are Belgium citizens/residents;

- Anaise Umubyeyi Kanimba is a Belgian citizen/U.S. permanent resident residing in Washington, D.C.;

- Tresor Rusesabagina is a Belgian citizen/U.S. permanent resident (place of residence not alleged); and

- Roger Rusesabagina and Carine Izere Kanimba are Belgian and U.S. citizens residing in Massachusetts and New York, respectively.

*See* ROA.192-275.

### 2. GainJet

GainJet is a duly certificated Greek private charter jet operator and management company organized and existing under the laws of Greece with a principal place of business in Athens, Greece.  ROA.305-11.  Founded in 2006, GainJet is based in Athens, Greece, and offers private jet charter services to destinations throughout the world.  GainJet's aircraft fleet, which includes Boeing 757 and 737 aircraft and Gulfstream, Embraer, and Challenger jets, is positioned throughout Europe and the Middle East to serve its customers.  ROA.306. Customers of GainJet range from heads of state and CEOs of major corporations to global rock bands and international sports teams.  GainJet routinely flies "VIPS,

kings [and] presidents" around the globe, including former President Bill Clinton, and most recently, the gold-medal winning United States women's national soccer team and Lady Gaga across Europe while she was performing there on tour. ROA.632; ROA.1226; *see also* David Slotnick, *Take a look at the exclusive private jet the US Women's National Team flew home from the World Cup*, Business Insider (Jul. 8, 2019) https://www.businessinsider.com/uswnt-flight-home-charter-private-plane-luxury-757-2019-7 (last visited Jan. 13, 2025).

As a Greek charter jet operator, GainJet has no operations in the United States. All GainJet aircraft—including the Gulfstream Challenger 605 jet used for Mr. Rusesabagina's transportation—are registered and based in Greece. ROA.307. Those aircraft are maintained and repaired in Greece pursuant to Greek law and the regulations set forth by the Hellenic Civil Aviation Authority (HCAA)—the equivalent of the Federal Aviation Administration. ROA.307.

GainJet has no presence in the United States. GainJet has no employees, agents, offices, or property in the U.S.; GainJet is not registered to do business in Texas or any other U.S. state; and GainJet does not direct any of its advertising towards the U.S. or Texas residents. ROA.307. To put this in perspective, in 2020 (the relevant time period for this case), GainJet operated 192 charter flights around the world. ROA.307. Of those, GainJet operated 13 flights to/from the U.S., only one of which was to Texas in September-October 2020. ROA.307; ROA.550.

15

### 3. *The Alleged Conspiracy Was Orchestrated by Rwanda, Not GainJet*

Plaintiffs allege a conspiracy to kidnap, torture, and imprison Mr. Rusesabagina by a group of "plotters": President Paul Kagame, the Republic of Rwanda, Rwandan security agents, Bishop Niyomwungere (an alleged Rwandan government agent), and GainJet (a Greek private charter aircraft operator).

According to Plaintiffs, Niyomwungere contacted Mr. Rusesabagina at his home in Texas and invited him to travel to Burundi to speak at churches as to his experiences during the Rwandan genocide. ROA.192-99. Mr. Rusesabagina flew from San Antonio, Texas to Chicago, Illinois and then to Dubai International Airport in the UAE on an Emirates flight. ROA.252. In the UAE, he departed Dubai on the GainJet flight that flew to Kigali International Airport in Rwanda from Al Maktoum International Airport ("Dubai Al Maktoum Airport") in Dubai.[8] ROA.252.

Based on representations made by Niyomwungere, Plaintiffs allege that Mr. Rusesabagina was tricked into believing that he was flying from Dubai to Burundi when, in fact, he was flown to Kigali, Rwanda against his will. ROA.192-275. Under Plaintiffs' theory, GainJet is implicated in the conspiracy because it provided *"false flight information"* to Mr. Rusesabagina and transported him to Rwanda rather than Burundi. Brief of Plaintiffs-Appellants ("Appellants Br.") at 15-18. The

---

[8]    Mr. Rusesabagina arrived on the Emirates flight at Dubai International Airport and departed on the GainJet charter flight for Kigali from Dubai Al Maktoum Airport. ROA.252.

only evidence of this "false flight information," however, comes from the Amended Complaint. Indeed, all the objective evidence in the record flatly contradicts Plaintiffs' theory of the case—GainJet was not advised that Mr. Rusesabagina was a passenger until a few hours prior to the flight's departure from Dubai Al Maktoum Airport (discussed below).

### 4. The Charter Flight Booking

GainJet had a standing charter agreement with Rwanda. *See* ROA.308; ROA.329-34. In July 2020, GainJet's ground operations manager in Greece, Fedra Pergialioti ("Ms. Pergialioti"), was contacted by a Rwandan governmental official named Jean Paul Nyirubutama ("JP Nyirubutama") requesting a charter flight from Dubai, UAE to Kilgari, Rwanda on August 19, 2020. *See* ROA.308; ROA.637. PJ Nyirubutama did not identify the Flight's passengers at the time. ROA.744; ROA.753. [9]

Neither Mr. Rusesabagina nor Niyomwungere arranged the flight or contracted with GainJet for carriage on the flight. ROA.309. In fact, contrary to the

---

[9]     Plaintiffs infer that a phone used by GainJet's Ground Operations Manager Fedra Pergialioti to coordinate the charter flight with the Rwandan government, was purportedly used to contact Mr. Rusesabagina in Texas, and was then intentionally damaged by GainJet "after this lawsuit began" to "[c]over its [t]racks." *See* Appellants Br. at 13-15. That claim is spurious. As the District Court held, although the mobile phone used by Ms. Pergialioti in communicating with the Rwandan government sustained damage, GainJet *produced* the WhatsApp messages with information sent by the Rwandan government to GainJet and WhatsApp records kept for GainJet accounts involved in the Flight's booking. *See* ROA.855.

erroneous and unsupported statement by Plaintiffs (Appellants Br. at 12-13), GainJet did not have any contact with Mr. Rusesabagina or Niyomwungere before the flight—GainJet did not even know the passenger names until a few hours before the flight's departure when they received travel documents from JP Nyirubutama identifying both Mr. Rusesabagina and Niyomwungere as Belgian nationals. ROA.309; ROA.642; ROA.647.[10]

JP Nyirubutama sent Mr. Rusesabagina's and Niyomwungere's Belgian passports/travel documents via a WhatsApp message to Ms. Pergialioti in Greece about six or seven hours prior to the Flight's departure. ROA.642. Aside from these travel documents, GainJet did not possess any information or contact details (*e.g.*, residency, home address, telephone number, etc.) as to Mr. Rusesabagina prior to or at the time of the flight. ROA.654.

No tickets, in a traditional sense, are issued for corporate air charter flights; a General Declaration is issued. ROA.642-43. The General Declaration lists the flight details, including the passengers, crew, aircraft registration, call sign, and the location where the plane is leaving to/from. ROA.642-43. This is the "binding

---

[10] This is not unusual as the booking of a charter flight is different than the booking of a scheduled flight on a commercial airline. When a customer books a scheduled flight, the airline instantly receives that passenger's information (*e.g.*, name, address, payment), and the customer receives a ticket/itinerary receipt containing the flight information. For a charter flight, however, it is "very common" that the complete flight and passenger information is not available until the day of the flight. ROA.642. While GainJet recommends that it receive this information 48-hours in advance, "it's common practice" to receive it just "a few hours before the flight." ROA.642.

document that the airport authorities [and] immigration want to see." ROA.643.
The General Declaration for this Flight stated that it would depart from Dubai, UAE
to Kigali, Rwanda. ROA.643.

### 5. *GainJet Had No Knowledge Of Or Role In the Alleged Conspiracy*

On August 19, 2020, GainJet flew the aircraft from its base in Athens to Dubai
Al Maktoum Airport to standby for the charter flight to Rwanda.[11]  The flight was
subsequently delayed by the Rwandan government and did not depart until August
27, 2020.  ROA.309; ROA.646.  Contrary to the District Court's assumption, this is
not uncommon.  Unlike with scheduled commercial flights, it is normal in corporate
charter aviation for a client to book a plane and keep it waiting.  As GainJet's CEO,
Captain Khdair testified: "[W]e often get flights booked and [the plane] can stay for
two weeks [] for a client before they use the plane. As long as they pay us for the
plane sitting down, we have no problem." ROA.644.

JetEx FZCO ("JetEx"), GainJet's ground handler at Dubai Al Maktoum
Airport, obtained the necessary overflight permits from Saudi Arabia, Sudan, and
the Congo for the flight to Rwanda.  ROA.309-10.  JetEx personnel escorted Mr.
Rusesabagina and Niyomwungere through UAE customs and immigration and onto

---

[11]    The GainJet aircraft used for this flight was a Bombardier Challenger 605 (Reg No. SX-FSA) long-range executive jet.  ROA.308-10.  The flight was given call sign number GNJ68.
ROA.337.

the aircraft for the flight to Rwanda. ROA.310. The flight was always going to Rwanda; at no time was Burundi a scheduled destination. ROA.310.

On August 27, 2020, the charter flight departed Dubai Al Maktoum Airport bound for Kigali, Rwanda. Mr. Rusesabagina and Niyomwungere were the only passengers on the flight along with three GainJet crewmembers (pilot, first officer, and a flight attendant). ROA.308. As noted:

- Mr. Rusesabagina and Niyomwungere had Belgian passports. ROA.309; ROA.649;

- GainJet did not have any contact with either passenger at any time prior to the charter flight. ROA.309;

- Neither Mr. Rusesabagina nor Niyomwungere arranged the flight nor had any contact with GainJet before the flight. ROA.309;

- GainJet received their names only six (6) hours prior to departure. ROA.642;

- GainJet did not know of either passenger having a connection to the U.S. or Rwanda or how they traveled to the UAE. ROA.309; and

- GainJet neither had knowledge of nor had any involvement in the carriage of Mr. Rusesabagina from Texas to Dubai. ROA.309-11; ROA.638-640.

GainJet also was neither aware of Mr. Rusesabagina's background nor any plan by the Rwandan government, Niyomwungere, or anyone else to deceive or detain him. ROA.309-10. The "flight [to Rwanda] was normal" and arrived at Kigali International Airport as scheduled. ROA.635-50; ROA.310. After Mr. Rusesabagina and Niyomwungere deplaned the GainJet aircraft in Kigali, the

GainJet aircraft was refueled and departed Kigali for Athens, Greece within one hour. ROA.310-11. This was standard practice and not unusual as the crew did not want to exceed their duty time. ROA.311.

Plaintiffs nevertheless allege that once the plane landed, Mr. Rusesabagina realized he was at the Kigali International Airport and began screaming for help, before Rwandan security agents blindfolded him and tied at the hands and feet. ROA.199; Appellants Br. at 16. The Rwandan government indicted Mr. Rusesabagina on terrorism-related charges (ROA. 198-272.), and Mr. Rusesabagina was tried and convicted.

As evidence of GainJet's alleged participation in the conspiracy to kidnap Mr. Rusesabagina, Plaintiffs point to a portion of testimony from the alleged co-conspirator, Niyomwungere, who testified at Mr. Rusesabagina's trial: "Myself, the pilot and cabin crew knew we were coming to (the Rwandan capital) Kigali. The only person who didn't know where we were headed was Paul." ROA.199; ROA.253. Plaintiffs further allege while on board the aircraft, the GainJet pilot and flight attendant represented to Mr. Rusesabagina that the flight's destination was Burundi. ROA.253.

As explained to the District Court, while these unsupported allegations are not relevant to the jurisdictional issues presented, they are incorrect and based on Plaintiffs' misinterpretation of the portion of Niyomwungere's trial testimony they

quote. Niyomwungere was not describing GainJet's knowledge of or participation in a conspiracy; he only testified that everyone other than Mr. Rusesabagina knew that Kigali was the flight's destination.[12]  Moreover, Niyomwungere's further trial testimony made plain that the GainJet crew never deceived Rusesabagina as to the flight's destination nor was GainJet aware of or a participant in any plan to deceive and detain Mr. Rusesabagina.  Again, while not relevant to the jurisdictional issues raised in it this motion, Plaintiffs selectively ignore Niyomwungere's additional testimony that:

- he distracted Mr. Rusesabagina from crew announcements as to the flight's Kigali destination (time stamp 36:40-37:29);

- he positioned Mr. Rusesabagina's seat so he could not view the cabin flight progress screen map (time stamp 35:39-36:21);

- he directed Mr. Rusesabagina's conversation with crewmembers away from mentioning Kigali (time stamp 37:40-39:37); and

- Mr. Rusesabagina slept through crew announcements as the flight approached Kigali.  (time stamp 39:22-40:12).

*See* ROA.285-87.

After seeing the press reports of this incident, GainJet's CEO Captain Khdair was naturally concerned.  Captain Khdair spoke to the GainJet flight crew, including the flight captain, who stated unequivocally: "He had nothing to report, the

---

[12]      *See* ROA.286. (*Constantin NIYOMWUNGERE: How he planned RUSESABAGINA's "trip" to Rwanda*" https://www.youtube.com/watch?v=i3k--yqUdgI (last visited Jan. 13, 2025) (time stamp 52:30-53:40).

captain…He came and said the flight was normal." ROA.635. "[F]or us," Captain Khdair explained, "the flight was normal. And these are all accusations, false accusations [against GainJet]." ROA.639. Captain Khdair also phoned the Rwandan government, who advised him: "[Y]ou did a normal flight and this had nothing to do with you. This is an internal domestic matter." ROA.641.

## SUMMARY OF ARGUMENT

The District Court correctly concluded that GainJet is not subject to specific personal jurisdiction in Texas.

Specific jurisdiction focuses on the defendant, the forum, and the litigation. It is reserved for cases where the defendant (1) purposefully directs its activities toward the forum (2) on a claim that arises out of the defendant's suit-related contacts and (3) the exercise of jurisdiction is reasonable. None of these three elements are met here. First, GainJet has no purposeful contacts with Texas. It is a Greek private jet operator with no presence or operations in the forum. Second, GainJet has no suit-related contacts in Texas. All the allegedly tortious conduct occurred overseas, not in Texas. Third, exercising jurisdiction over GainJet is unreasonable.

Plaintiffs nonetheless argue that exercising jurisdiction over GainJet is proper based on two "independent" theories: the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984), and conspiracy jurisdiction. Both theories are without merit.

23

The District Court properly rejected *Calder*'s "effects" test and Plaintiffs' theory cannot be reconciled with the Supreme Court's later decision in *Walden v. Fiore*, 571 U.S. 277 (2014). For specific jurisdiction, it is not where the plaintiff "felt" the injury but instead whether the defendant's conduct establishes a "connection" with the forum. Here, GainJet has no conduct connecting it to Texas. Even assuming Plaintiffs were injured in Texas, that is not sufficient for the exercise of jurisdiction. In any event, the *Calder* "effects" test has no application to this case because GainJet did not expressly aim its conduct at Texas and the "brunt" of Plaintiffs alleged injuries occurred outside of Texas.

Plaintiffs also cannot rely on conspiracy jurisdiction. The Fifth Circuit has consistently rejected a conspiracy theory of personal jurisdiction. To exercise jurisdiction, Plaintiffs must demonstrate that each defendant in the alleged conspiracy, including GainJet, has sufficient minimum contacts with the forum. Plaintiffs cannot do so here. GainJet has no contacts, let alone minimum contacts, with the forum.

Even if this Court were to abandon its precedent on conspiracy jurisdiction, Plaintiffs claims still fail because they cannot establish that any of the alleged co-conspirators are subject to jurisdiction in Texas.

The decision of the District Court dismissing the action for lack of personal jurisdiction should be affirmed.

24

# ARGUMENT

# I

## STANDARD OF REVIEW

The standard of review of a district court's dismissal for lack of personal jurisdiction is de novo. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court is "not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion…." *Sangha*, 882 F.3d at 101. All non-conclusory uncontroverted allegations of the party seeking to assert jurisdiction should be accepted as true, and the Court must "resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). However, "such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Sangha*, 882 F.3d at 101.

Here, as the District Court correctly concluded, Plaintiffs have not made a *prima facie* showing of personal jurisdiction over GainJet in Texas.

**II**

**THE DISTRICT COURT CORRECTLY CONCLUDED THAT GAINJET LACKS SUFFICIENT "MINIMUM CONTACTS" WITH TEXAS FOR THE EXERCISE OF SPECIFIC JURISDICTION**

The District Court correctly concluded that it lacked specific personal jurisdiction over GainJet. This Court should affirm.

A federal district court in Texas can only exercise personal jurisdiction over a foreign defendant if: (1) Texas's long-arm statute confers jurisdiction and (2) the exercise of jurisdiction comports with due process. *Sangha,* 882 F.3d at 101. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* Due process requires that the foreign defendant have "minimum contacts" with the forum such that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. Plaintiffs, however, only alleged specific jurisdiction. Specific jurisdiction is more limited than general jurisdiction and "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). That relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden,* 571 U.S. at 284-85. The "contacts must

26

be the defendant's *own* choice," *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351, 359 (2021), and not "random, isolated, or fortuitous contacts" the
defendant makes by interacting with plaintiffs or third parties affiliated with the
forum. *Walden,* 571 U.S. at 286. Simply stated, the "plaintiff cannot be the only
link between the defendant and the forum." *Id.* at 277; *see also Rush v. Savchuk*,
444 U.S. 320, 332 (1980) (Plaintiff's contacts with the forum cannot be "decisive in
determining whether the defendant's due process rights are violated.").

The Fifth Circuit applies a three-step analysis to determine whether specific
jurisdiction exists over a defendant:

1. whether the defendant has "purposely direct[ed] its activities toward the
   forum state or purposefully availing itself of the privileges of the state";

2. whether the claim "arises out of or results from the defendant's forum-
   related contacts"; and

3. whether the "exercise of personal jurisdiction is fair and reasonable."

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019).

While Plaintiffs articulate the three-step analysis for specific jurisdiction
(Appellants Br. at 21), nowhere do they analyze GainJet's "minimum contacts" and
apply them under each prong of this test. Even if they had, the result would be the

same—Texas cannot exercise specific personal jurisdiction over GainJet. Thus, the decision of the District Court should be affirmed.

## A.    GainJet Did Not Purposefully Direct Any Activities At Texas

The Supreme Court has long held that for a court to exercise specific jurisdiction over a defendant, the defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 592 U.S. at 359 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Such jurisdiction exists only when the defendant has "purposefully directed its activities at the forum state" *and* "the litigation results from alleged injuries that arise out of or relate to those activities." *Sangha*, 882 F.3d at 101.

As the District Court properly held, GainJet has no "*purposeful* contacts with Texas or with the United States." ROA.1147. GainJet: (1) does not have any employees or agents in Texas; (2) is not registered to do business in Texas; (3) does not have any offices or property in Texas; (4) does not direct any advertising toward Texas residents; and (5) operated just *one* flight after the alleged incident here to/from Texas in 2020, out of 192 charter flight around the world. ROA.307. GainJet's alleged "misrepresentation" to Mr. Rusesabagina in Dubai, (Appellants Br. at 17, 28, 51), is "not a contact with Texas or the United States, but with a person who happens to reside there." ROA.1158. This is "insufficient" for the exercise of

specific jurisdiction. ROA.1155. (citing *Walden*, 571 U.S. at 284-85) ("the plaintiff cannot be the only link between the defendant and the forum."); ROA.1158.

To the extent that Plaintiffs allege GainJet has sufficient "contacts" with Texas, Plaintiffs either misrepresent the record or completely make it up.  For example, Plaintiffs repeatedly allege that GainJet "communicated with Mr. Rusesabagina in Texas to get a copy of his passport."  Appellants Br. at 23, 28, 30, 32, 52.  That is false.  As the District Court found, there is ***"no evidence"*** that GainJet ever contacted Mr. Rusesabagina "while he was in Texas (or anywhere else in the United States) or had any other contact with Texas or the United States in furtherance of the conspiracy."  ROA.1157.  The record makes plain that JP Nyirubutama sent Mr. Rusesabagina's and Niyomwungere's Belgian passports/travel documents via a WhatsApp message to GainJet Ground Operations Manager Fedra Pergialioti in Greece about six or seven hours prior to the Flight's departure.  ROA.642.

Equally incorrect is Plaintiffs insistence that GainJet provided "false flight information" to Mr. Rusesabagina to deceive him into thinking he was flying to Burundi rather than Rwanda.  Plaintiffs use the phrase "false flight information" *39 times* in their opening brief and call it the "lynchpin" of the alleged conspiracy.  *See*, *e.g.*, Appellants Br. at 3, 5, 11, 8, 23, 29, 46.  There is no objective evidence in the

record to support this claim.[13]  This flight was booked by the Rwandan government as a flight from Dubai, UAE to Kigali, Rwanda; Burundi was never a destination.  *See* ROA.654; ROA.649-50. To underscore the point, as noted above, GainJet did not even learn that Mr. Rusesabagina was a passenger until six hours before the flight when GainJet received his Belgian passport.  ROA.642.

## B.    Plaintiffs' Claims Against GainJet Did Not Arise Out Of Or Result From Any GainJet Contacts With Texas

GainJet has no suit-related contacts in Texas.  Without suit-related contacts that the litigation "arises out of or relates to," there cannot be specific jurisdiction. A defendant's "suit-related conduct must create a substantial connection with the forum State."  *Walden,* 571 U.S. at 284.  Absent this connection, "specific jurisdiction is lacking regardless of the extent of defendant's unconnected activities

---

[13]    In support of this allegation, Plaintiffs rely on an uncertified translation of notes prepared by an attorney of an alleged conversation between Mr. Rusesabagina and his counsel.  ROA.799-805.  There are numerous problems with these notes: (1) the date of the discussion is not indicated, (2) the discussion was conducted in two different languages (French and Kinyarwandan) and (3) the notes present a contradictory version of the events leading to Mr. Rusesabagina's detainment—alleging that he was drugged and tied up in the GainJet aircraft before landing in Kigali.  ROA.800. No such allegations are made in this Amended Complaint.   Even putting all of that aside, this purported interview is irrelevant to the central issue of this appeal—whether GainJet has jurisdictional contacts *with the state of Texas.*

in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017).

Plaintiffs' claims against GainJet do not "arise out or result from" any possible forum-related contacts. Plaintiffs' claims against GainJet arise from GainJet's carriage of Mr. Rusesabagina from Dubai, UAE to Kigali, Rwanda. GainJet did not contract with Mr. Rusesabagina for his carriage on the flight; instead, the Rwandan government contracted with GainJet for the flight pursuant to an Annual Charter Contract. ROA.1157-60. GainJet did not have any contact with Mr. Rusesabagina prior to his carriage on the flight and did not even know if either Mr. Rusesabagina or Niyomwungere had any connections to the United States. ROA.1157-60. GainJet thus has no suit-related conduct with Texas.

## C.    Exercising Jurisdiction Over GainJet In Texas Is Unreasonable

Finally, the exercise of jurisdiction over a GainJet in Texas would be unreasonable. Courts consider a balance of factors when making this determination:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Sangha,* 882 F.3d at 102.

It would not be fair and reasonable for a Texas court to exercise personal jurisdiction over GainJet based solely on allegations of imputed conduct, especially

where GainJet lacked knowledge of any connection to the U.S. during its UAE-Rwanda carriage of Mr. Rusesabagina, who was travelling on a Belgian passport. As the District Court observed, "it was equally foreseeable to GainJet that the effects of its tortious conduct would be 'felt' in Belgium [as in Texas]." ROA.1159. Plaintiffs' claims against GainJet involve conduct that occurred in the UAE or in Rwanda.  These allegations in no way concern Texas or the U.S.

Moreover, GainJet would face a heavy burden in defending itself in this forum.   The Supreme Court has emphasized "the burdens" on non-resident defendants "of litigating in a distant or inconvenient forum."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980).   All witnesses, documents, and evidence relevant to liability and the alleged conspiracy (as well as most of the damage evidence) are located outside of the U.S. in the UAE, Greece, Rwanda, and Belgium.  The importance of such evidence is magnified by Plaintiffs' own recognition that service of Niyomwungere could not be effectuated in the forum.

Simply put, GainJet is not subject to specific personal jurisdiction in Texas.[14]

---

[14]     While Plaintiffs do not raise Fed. R. Civ. P. 4(k)(2), the District Court properly rejected the use of Rule 4(k)(2) as a basis for the exercise of personal jurisdiction in this case.  The Court held that Rule 4(k)(2) is a "procedural rule" and applies "only in cases" where the plaintiff establishes that the underlying "dispute arose out of or related to [the defendant's] United States contacts, that is, where specific jurisdiction exists."  ROA.1155-60.  Because Plaintiffs cannot make such a showing, Rule 4(k) jurisdiction is inapplicable. ROA.1156-57.

## III

### THE DISTRICT COURT CORRECTLY FOUND THAT *CALDER* DOES NOT ESTABLISH SPECIFIC PERSONAL JURISDICTION OVER GAINJET

Plaintiffs' latest jurisdictional theory is that GainJet's allegedly tortious conduct—transmitting "false flight information" to Mr. Rusesabagina—was felt in Texas, and therefore Texas courts have specific jurisdiction over GainJet under the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). The District Court correctly rejected Plaintiffs' reliance on the *Calder* "effects" test and held that GainJet was not subject to specific jurisdiction in Texas.

### A.     Plaintiffs' Theory Of The Case Cannot Be Reconciled With *Walden*

Plaintiffs spend much of their briefing arguing for the *Calder* "effects" test, but ignore that their theory of the case cannot be reconciled with *Walden v. Fiore*, 571 U.S. 277 (2014).

In *Walden*, two professional gamblers were travelling from Puerto Rico to Nevada carrying almost $97,000 in cash when they were stopped by a police officer during a layover in Georgia. 571 U.S. at 279-80. Believing the money to be drug-related, the officer seized the money as subject to forfeiture and later drafted a "false and misleading" affidavit about the encounter and submitted it to the United States Attorney's Office in Georgia. *Id.* at 280-81. No forfeiture action was filed, and the money was eventually returned to the gamblers in Nevada. *Id.* at 281. The gamblers

later sued the Georgia police officer in Nevada. Reversing the district court, the Ninth Circuit held that Nevada could exercise specific jurisdiction over the Georgia police officer because he had "expressly aimed" his false affidavit at Nevada by submitting it with knowledge that it would affect persons with a "significant connection" to Nevada. *Id.* at 282.

The Supreme Court reversed and found no personal jurisdiction over the Georgia police officer in Nevada. Although the effects of the police officer's allegedly tortious conduct (*i.e.*, the seizure of cash) were clearly felt by the gamblers in Nevada, the Supreme Court nonetheless concluded that the officer lacked minimum contacts with Nevada because "no part" of his conduct occurred in Nevada—he had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289. And even if the officer "allegedly directed his conduct at plaintiffs whom he knew had Nevada connections," that could not create jurisdiction where "none of [the officer's] challenged conduct had anything to do with Nevada itself." *Id.* Simply put, the Georgia police officer "formed no jurisdictionally relevant contacts with Nevada." *Id.*

This case is on all fours with *Walden.* Like the officer in *Walden*, GainJet has "no jurisdictionally relevant contacts" with Texas. GainJet "never traveled to, conducted activities within, contacted anyone in, or sent anything" to Mr.

Rusesabagina or a third party in Texas. *See Walden*, <u>571 U.S. at 289</u>. The District Court specifically found "no evidence" that GainJet "ever contacted Mr. Rusesabagina" or "had any other contact with Texas or the United States." <u>ROA.1157</u>. The District Court further reasoned that the "false flight information" that Plaintiffs focus on "is not a contact with Texas or the United States, but with a person who resides there." <u>ROA.1158</u>. That is "insufficient" for the exercise of specific jurisdiction over GainJet. <u>ROA.1158</u>. (citing *Walden*, <u>571 U.S. at 284</u>)).

Plaintiffs claim that the District Court "misapplied *Walden*" by "ignoring that GainJet committed torts against and injured Mr. Rusesabagina in Texas." Appellants Br. at 32. This is the same argument that the *Walden* Court rejected. "Mere[ly] injur[ing]" Mr. Rusesabagina in Texas is "not a sufficient connection to the forum." <u>571 U.S. at 290</u>. The proper question for specific jurisdiction is not "where the plaintiff experienced a particular injury" but instead "whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* GainJet has no conduct connecting it to Texas, and thus cannot be subject to specific jurisdiction.

**B.   The *Calder* "Effects" Does Not Create Specific Jurisdiction Over GainJet**

Plaintiffs contend that GainJet is subject to jurisdiction where, as in *Calder*, the "defendant commits a tort, and causes injury, in the forum." Appellants Br. at

19.   Far from supporting Plaintiffs' position, however, *Calder* is compelling precedent against it.

In *Calder,* Shirley Jones, a television entertainer based in California, brought a libel suit in California state court claiming she had been libeled by an article written and edited by two Florida writers from the National Enquirer. 465 U.S. at 784. The Supreme Court held that a California forum had specific jurisdiction over the writers because their actions were "expressly aimed" at California and they knew that the "brunt" of the injuries would be "felt" by the plaintiff in California. *Id.* at 789-90. The libelous story "impugned the professionalism of an entertainer whose television career was centered in California," was drawn from California sources, and the injuries were sustained in California. *Id.* at 788-89.

This case is nothing like *Calder*. Unlike the writers in *Calder*, GainJet did not "expressly aim" its conduct at the forum nor was it aware that Mr. Rusesabagina had any connections to Texas or the U.S. *See* ROA.1158. ("[I]t is not even clear that GainJet employees had any reason to know or believe that the effects" of its conduct "would be felt in Texas…it was equally foreseeable to GainJet that the effects of its tortious conduct would be 'felt' in Belgium"). The *Calder* Court focused the "various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story." *Walden,* 571 U.S. at 287. GainJet, by contrast, has created no contacts with Texas. Finally, *Calder* found California to

be "the focal point both of the story and the harm suffered." *Calder,* 465 U.S. at 789. Here, again, the focal point of the alleged conduct and harm suffered is either Dubai or Rwanda, but certainly not Texas.

In any event, Plaintiffs fail to recognize that without any evidence of GainJet's "minimum contacts" with the forum, Plaintiffs' *Calder* "effects" test argument fails.

The *Calder* effects test "does not supplant the need to demonstrate minimum contacts that constitute purposeful availment, that is, conduct by the non-resident defendant that invoked the benefit and protections of the state or was otherwise purposefully directed toward a state resident." *Mullins v. TestAmerica, Inc.,* 564 F.3d 386 (5th Cir. 2009); *see Stroman Realty, Inc. v. Wercisnki,* 513 F.3d 476, 486 (5th Cir. 2008)(finding no "effects" jurisdiction where Arizona Commissioner was not "expressly aiming" her actions at Texas); *Allred v. Moore & Peterson,* 117 F.3d 278 (5th Cir. 1997)(holding that, under *Calder,* the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum).

Here, after over four years of litigation, Plaintiffs are unable point to evidence of *any* GainJet contact with Texas in furtherance of the alleged conspiracy. Even if GainJet knew of Mr. Rusesabagina's Texas connections (which it did not), directing conduct at Mr. Rusesabagina with such knowledge is insufficient to establish jurisdiction over GainJet in Texas. *See Walden,* 571 U.S. at 289; *Moncrief Oil Int'l*

*Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007) ("declin[ing] to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident").

Further, to establish jurisdiction under the *Calder* "effects" test, Plaintiffs need to establish that GainJet not only reached into Texas, but that the "brunt" of the injury was suffered in the state and GainJet had knowledge that such injury would be felt in the state.   *See Calder,* 465 U.S. 788-89 (finding that the "brunt" of the injury was suffered by plaintiff in California and that California was "the focal point both of the story and the harmed suffered.); *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 425 (5th Cir. 2005)(finding no jurisdiction under *Calder* where "[t]he brunt of the harm…was suffered in Germany, not Texas.  In sum, Germany is the focal point both of the story and the harm suffered.").  Plaintiffs cannot do so here. Clearly, the focal point of GainJet's alleged conduct and the harm suffered by Plaintiffs is not Texas.

**C.    *Ford Motor* and *Guidry* Do Not Support Jurisdiction**

Aside from *Calder*, Plaintiffs rest this jurisdictional theory on two cases that are readily distinguishable.  *See* Appellants Br. at 24-29 (*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021); *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir. 1999)).

*Guidry* does not support Plaintiffs' position.  That case involved a consumer fraud suit against six tobacco trade associations, alleging that the associations conspired to lie about the addictive and carcinogenic effects of tobacco in published articles and ads circulated in Louisiana.  *Guidry*, 188 F.3d at 622-26.  Applying *Louisiana's* long-arm statute, the Fifth Circuit found specific jurisdiction over the trade associations because each "defendant *individually* had minimum contacts with the forum out of which the plaintiffs' causes of action arose."  *Id.* at 625.  Plaintiffs cannot satisfy this test from *Guidry*.  GainJet has no contacts with Texas, and the intentional tort claims at issue here arise out of conduct that occurred in Dubai and Rwanda, not in Texas.  ROA.1157-60.

Plaintiffs' reliance on *Ford* is equally unavailing.  At issue in *Ford* was whether Montana and Minnesota could exercise specific jurisdiction over Ford Motor Company in a products liability case given that the vehicles that injured the plaintiffs were "designed, manufactured and [and first] sold" elsewhere.  *Ford*, 592 U.S. at 357.  The Supreme Court held that jurisdiction was proper because Ford had a "veritable truckload of contacts with Montana and Minnesota" and the causes of action "ar[ose] from car accidents in one of those [s]tates."  *Id.* at 365-71.

This case could not be more different than *Ford*.  To begin with, *Ford* does not even cite *Calder* or mention the "effects" test, so it has no application here.  *See* Appellants Br. at 26-27 (falsely claiming that *Ford* was part of "*Calder* and its

progeny").  Second, Ford Motor Company had a "truckload" of contacts with Minnesota and Montana; GainJet has *zero* contacts with Texas.  Finally, while Ford Motor Company could "reasonably anticipate" being sued in Minnesota and Montana, GainJet had no reasonable expectation of being sued in Texas.  There is not a "strong 'relationship' among [GainJet,] [Texas,] and the litigation," *Ford*, <u>592 U.S. at 353</u>, in the same way that there was such a relationship in *Ford*.

**IV**

**THE DISTRICT COURT CORRECTLY REJECTED JURISDICTION OVER GAINJET BASED ON THE THEORY OF CONSPIRACY JURISDICTION**

Plaintiffs invite this Court to "clear up [the] persistent confusion" about the "demise of conspiracy jurisdiction" in the Fifth Circuit.  Appellants Br. at 39.  But Plaintiffs are the only ones who are confused.  As the District Court correctly concluded, "[t]he Fifth Circuit…does not recognize a 'conspiracy theory' of personal jurisdiction." <u>ROA.1155</u>; <u>ROA.1157</u>.  That has been the law in this Circuit (as well as in the state of Texas) for decades and there is no reason to change course now, *especially considering that Plaintiffs cannot establish personal jurisdiction over any of the alleged co-conspirators*.

**A.    Conspiracy Jurisdiction Is Not Viable In The Fifth Circuit**

Recognizing GainJet's lack of any Texas contacts related to this action, Plaintiffs seek to base jurisdiction over GainJet by imputing the conduct of alleged

40

non-party co-conspirators—the Rwandan government, Rwandan government officials, and Niyomwungere. *See*, *e.g.*, Appellants Br. at 39. Plaintiffs' argument fails.

Conspiracy jurisdiction violates the U.S. Constitution and does not comport with the fundamental requirements of due process. *See* U.S. Const. amend. V; U.S. Const. amend. XIV, §1. It cannot be squared with the Supreme Court's repeated holdings that the required "relationship" for specific jurisdiction between the defendant and the plaintiff's claims "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Specific jurisdiction is based on the defendant's "*own affiliation[s]* with the forum state," not based on "contacts [the defendant] makes by interacting with other persons affiliated with the state." *Id.* at 286 (emphasis added).

To that end, this Circuit does not recognize a conspiracy theory of establishing jurisdiction over a defendant. *Delta Brands, Inc. v. Danieli Corp.,* 99 F. App'x 1, 6 (5th Cir. 2004); *Chow v. United States,* 2021 WL 3438365, *2 (5th Cir. 2021); *Guidry*, 188 F.3d at 625; *WorldVentures Holdings, LLC v. Mavie,* 2018 WL 6523306, *10 (E.D. Tex. Dec. 12, 2018); *Fed'n of State Massage Therapy Boards v. Mendez Master Training Ctr., Inc.,* 2018 WL 534540, *5, n. 9 (S.D. Tex. Jan. 24, 2018); *Internacional Realty v. Ferrari,* 2008 WL 938554,*2 (W.D. Tex. April 4,

2008); *Paolino v. Argyll Equities, LLC,* 401 F. Supp. 2d 712, 720 (W.D. Tex. 2005);

*accord Nat'l Industri Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773 (Tex. 1995).[15]

It is well-settled that a defendant's relationship with a plaintiff or third party, standing alone, is insufficient to provide a basis for jurisdiction. *Walden*, 571 U.S. at 286; *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). The requirements of specific jurisdiction "must be met as to each defendant over whom a state court exercises jurisdiction." *Id.* Conspiracy jurisdiction, in turn, requires a showing that a defendant "individually, and not as part of the conspiracy, had minimum contacts with Texas." *Delta Brands, Inc. v. Danieli Corp.,* 99 F. App'x 1, *6 (5th Cir. 2004).

In *Delta Brands*, this Court squarely rejected a plaintiff's claim that an alleged conspiracy between a Swedish company and an Italian company to obtain the plaintiff's confidential information allowed the court to "impute" each defendant's jurisdictional contacts to the other defendants. 99 F. App'x at *6. It is not enough for specific jurisdiction to allege that a defendant was part of a larger conspiracy that "directed its actions at Texas"; rather, a plaintiff must show that each defendant "*individually*, and not as part of a conspiracy, had minimum contacts with Texas." *Id.*

---

[15]     Plaintiffs erroneously contend that "Texas state law…support[s]" the exercise of conspiracy jurisdiction. *See* Appellants Br. at 43-44. Not so. Like the Fifth Circuit, the Texas Supreme Court has rejected the use of conspiracy personal jurisdiction. *See, e.g.*, *Nat'l Indus. Sand Ass'n,* 897 S.W.2d at 773 ("[W]e decline to recognize assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state.").

Applying that approach, this Circuit has consistently rejected the exercise of conspiracy jurisdiction over a defendant with no connection to the forum. *See*, *e.g.*, *Chow*, No. 20-30503, 2021 WL 3438365, at *2 ("[Plaintiffs] appear to believe that their civil conspiracy claim is enough to establish personal jurisdiction over all of the defendants. There is no authority from this court supporting [this] belief[.]"); *Guidry*, 188 F.3d at 625 (specific jurisdiction for a "tort committed in the state" requires a showing that each defendant "individually and not as part of a conspiracy" has minimum contacts with the forum); *Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984) ("[N]either the present conclusory allegations of conspiracy by the California defendants based upon their acts in California, nor the alleged effects of this conspiracy in Texas, show a claim of sufficient minimum contacts with Texas that would support personal jurisdiction of Texas courts against these defendants for their acts in California.); *see also WorldVentures Holdings*, 2018 WL 6523306, at *10 ("[T]o establish that the court has personal jurisdiction over a particular co-conspirator, the plaintiff must show that the conspiracy was related to or arose out of *that* co-conspirator's contacts with the state." (emphasis added).

Plaintiffs misunderstand this distinction and persist in raising the faulty argument that "[t]his is an ideal case for the Court" to exercise conspiracy jurisdiction over GainJet because it "joined a conspiracy" to kidnap and detain Mr. Rusesabagina.  Appellants Br. at 41-42.  Even if that were true—which it is not—it

is insufficient for specific jurisdiction. Plaintiffs are required to show that GainJet itself and not through a co-conspirator, has sufficient minimum contacts with the forum. *See*, *e.g.*, *Delta Brands,* 99 F. App'x, at *6. Plaintiffs cannot make such a remarkable showing. GainJet has no "minimum contacts" with Texas or the United States and cannot be subject to jurisdiction in the forum. *See supra* at 26-33.

## B.    Plaintiffs Cannot Establish Conspiracy Jurisdiction Over The Alleged Co-Conspirators

Even if this Court were to accept Plaintiffs' invitation and disregard its own precedent on conspiracy jurisdiction, Plaintiffs still fail to allege sufficient facts or establish that Texas has jurisdiction over *any* of the alleged co-conspirators. Plaintiffs argue that there is conspiracy jurisdiction over GainJet based on one of the "co-conspirators case-related contacts." Appellants Br. at 42-43 (citing out-of-circuit precedent). This argument, however, has a fatal flaw. A court must have personal jurisdiction over one of the conspirators before it can exercise personal jurisdiction over the co-conspirator as well. *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 270 (2d Cir. 2023), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*, 144 S. Ct. 681 (2024)(under the theory of conspiracy jurisdiction, "one 'conspirator's minimum contacts allow for personal jurisdiction over a co-conspirator,' even when the co-conspirator lacks such contacts itself.").

Here, Plaintiffs not only fail to allege or present any facts or evidence to establish that any of the alleged conspirators had sufficient contacts with Texas, they

44

abandoned all of their claims against the alleged conspirators (Niyomwungere in Texas and the others in D.C.). *See supra* at 4,10-12; *see also Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.,* 115 F. App'x 662, 666 n. 16 (5th Cir. 2004) ("[B]are allegations of conspiracy without factual support do not suffice to establish minimum contacts for personal jurisdiction."); *see also Guidry,* 188 F.3d at 631-32 ("[A] general allegation of conspiracy without a statement of the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action.").

**Niyomwungere.** As an initial matter, not only did Plaintiffs make no attempt to serve Niyomwungere, they voluntarily dismissed their claims against Niyomwungere. *See supra* at 4. Thus, personal jurisdiction cannot be established over Niyomwungere.

Plaintiffs' brief vaguely alleges that Niyomwungere "contacted Mr. Rusesabagina at his home in San Antonio, inviting him to travel to Burundi" to give speeches about the Rwandan genocide. Appellants Br. at 12. But Plaintiffs do not allege any details about these communications, namely, when and how Niyomwungere contacted Mr. Rusesabagina, whether Mr. Rusesabagina was in Texas, or if Niyomwungere even knew Mr. Rusesabagina was in Texas at the time of contact. *See id.* This is insufficient for conspiracy jurisdiction. At a minimum, Plaintiffs must allege that they *knew* Niyomwungere was carrying out acts in

furtherance of the conspiracy in Texas. *See EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 91 (D.D.C. 2017), *aff'd*, 894 F.3d 339 (D.C. Cir. 2018) ("[F]ollowing *Walden*, a plaintiff who seeks to establish jurisdiction over a defendant based on a co-conspirator's contacts must plead, at a minimum, that the defendant *knew* his co-conspirator was carrying out acts in furtherance of the conspiracy *in the forum*."); *see also Am. Realty Tr., Inc.,* 115 F. App'x at 666 n. 16.

    ***Rwanda.***  To the extent that Plaintiffs attempt to impute the conduct of the Government of Rwanda to GainJet to establish jurisdiction, the District of Columbia has already held that the Government of Rwanda is immune from suit. ROA.921; *see Rusesabagina DDC,* 2023 WL 355951, at *5-6. Courts lack personal jurisdiction over foreign states immune from suit under the FSIA. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 845 (5th Cir. 2000)(noting that personal jurisdiction over a foreign state exists only when an exception to foreign sovereign immunity applies).

    ***Rwandan government officials.***  Plaintiffs made no attempt to obtain jurisdiction over the unnamed Rwandan government officials that they sued in the D.D.C. Action. Plaintiffs did not name them as defendants in the District Court and their only mention in the briefing is an allegation that "GainJet frequently provided charter flights for Rwandan government officials…" Appellants Br. at 11. Obviously, this bare allegation is insufficient. In any event, Plaintiffs dismissed,

with prejudice, all claims against these officials in the D.D.C Action.  *See supra* at 10-11.   Thus, there is no personal jurisdiction over these officials in Texas.

V

## EVEN IF THIS COURT FINDS PERSONAL JURISDICTION OVER GAINJET, SUBJECT MATTER JURISDICTION DOES NOT EXIST

As noted, (*supra* at 3), because the District Court determined that it lacked personal jurisdiction over GainJet, it did not reach GainJet's other arguments that the case should be dismissed for lack of subject matter jurisdiction.  *See* ROA.1153-60; *see also Ruhrgas AG,* 526 U.S. at 588.   Plaintiffs claim that subject matter jurisdiction exists pursuant to (a) 28 U.S.C. § 1331; (b) 28 U.S.C. § 1332(a)(2), and (c) 28 U.S.C. § 1350.   Appellants Br. at 1.   Subject matter jurisdiction, however, does not exist.

***28 U.S.C. § 1331.***   The Amended Complaint asserted state-law claims and a claim for "violations of international law."   Subject matter jurisdiction pursuant to 28 U.S.C. § 1331 does not exist because Plaintiffs lacked any right of recovery under (a) the International Covenant on Civil and Political Rights,  Dec. 19, 1966, S. Treaty Doc. No. 95–20, 999 U. N. T. S. 171 ("ICCPR") or (b) the Convention Against Torture, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 113  ("CAT").   Neither the ICCPR nor the CAT is privately enforceable. *Martinez-Lopez v. Gonzales,* 454 F.3d 500, 502, (5th Cir. 2006); *Fountain v. Thaler,* 2015 WL 5168775, at *18 (E.D. Tex. Sept. 2, 2015).  Thus, allegations that GainJet violated

the ICCPR and CAT do not establish subject matter jurisdiction under 28 U.S.C. § 1331. *Abascal v. U.S.*, 2012 WL 5425761, *2 (C.D. Cal. Sept. 25, 2012), *report and recommendation adopted,* 2012 WL 5289863 (C.D. Cal. Oct. 24, 2012)(finding that Court lacked jurisdiction to hear ICCPR and CAT claims).[16]

***28 U.S.C. § 1332***.  Diversity jurisdiction does not exist pursuant 28 U.S.C. § 1332.  Section 1332 requires "complete diversity"—all plaintiffs must be citizens of states diverse from those of all defendants.  Federal courts do not have diversity jurisdiction over a lawsuit between citizens or subjects of a foreign state lacking a claim between citizens of different U.S. States.  *See Tagger v. Strauss Grp. Ltd.,* 951 F.3d 124, 127 (2d Cir. 2020); *Zermeno v. McDonnell Douglas Corp.,* 246 F. Supp. 2d 646, 652 n. 2 (S.D. Tex. 2003)(no diversity jurisdiction in suit between aliens); *see also* 18C Fed. Proc., L. Ed. § 45:2229 (alien citizenship on both sides of a controversy destroys diversity).  Permanent aliens are not deemed U.S. citizens for the purpose of diversity jurisdiction. *See Tagger,* 951 F.3d at 126-127.  Here, complete diversity is lacking as Plaintiffs are foreign and U.S. citizens and GainJet is a foreign citizen:

---

[16]     Gain Jet asserted that this action is governed by the Montreal Convention, which exclusively governs all claims for passenger injury occurring during international carriage by air, and that treaty subject matter jurisdiction was lacking as the U.S. was not one of the five fora enumerated in Article 33 where an action may be brought.  *See* ROA.290-96.

| Plaintiffs Citizenship | | GainJet Citizenship |
|---|---|---|
| Paul Rusesabagina | Belgian | Greece |
| Taciana Mukangamije | Belgian | |
| Anaise Umubyeyi Kanimba | Belgian | |
| Aimee-Lys Rusesabagina | Belgian | |
| Carine Izere Kanimba | Belgian/U.S. | |
| Aimee-Diane Rusesabagina | Belgian | |
| Tresor Rusesabagina | Belgian | |
| Roger Rusesabagina | Belgian/U.S. | |

*See* ROA.202-03.

***28 U.S.C. § 1350.***   Plaintiffs broadly asserted subject matter jurisdiction pursuant to the ATS and alleged violations of the UDHR.  *See* ROA.201.  Plaintiffs, however, cannot assert an ATS claim against GainJet because the ATS does not apply to claims against foreign corporations, such as GainJet, or extraterritorially. *See Jesner v. Arab Bank, PLC,* 138 S. Ct. 1386, 1403 (2018); *Kiobel v. Royal Dutch Petroleum Co.,* 569 U.S. 108 (2013);  *Sosa v. Alvarez-Machin,* 542 U.S. 692 (2004).

Likewise, to the extent the Amended Complaint can be read to assert claims against GainJet based on the UDHR, such claims are without merit because the UDHR has no binding effect and does not create a right of action.  *Macias v. Cunningham,* 2015 WL 3774312, *2 (W.D. Tex. June 11, 2015).  Accordingly, the Court does not have subject matter jurisdiction pursuant to § 1350.

Accordingly, even if personal jurisdiction existed over GainJet, the Amended Complaint is subject to dismissal for lack of subject matter jurisdiction.

# CONCLUSION

For the foregoing reasons, the decision of the District Court dismissing the

case for lack of personal jurisdiction over GainJet should be affirmed.

Date:  January 13, 2025

Respectfully submitted,

CLYDE & CO US LLP

By /s/ Andrew J. Harakas
Andrew J. Harakas
David F. Knapp
405 Lexington Avenue, 16th Floor
New York, New York 10174
Phone: (212) 710-3920

-and-

HICKS DAVIS WYNN, PC
Pamela C. Hicks
TBA No. 24007002
Federal I.D. No. 23061
3555 Timmons Lane, Suite 1000
Houston, Texas
Phone: (713) 589-2240

*Counsel for Defendant-Appellant*
*GainJet Aviation, S.A.*

50

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025, a copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF Court system which will send notification of such filing to all counsel of record.

/s/ Andrew J. Harakas

Andrew J. Harakas

## CERTIFICATE OF COMPLIANCE

Defendant-Appellee Counsel for GainJet Aviation, S.A. hereby certifies that this brief complies with the type-volume limitations as set forth in Fed. R. App. P. 32(g) and 5th Cir. R. 32.3.  The font is Times New Roman 14-point typeface and the brief contains 11,198 words.

/s/ Andrew J. Harakas
Andrew J. Harakas