No. 24-50630

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**PAUL RUSESABAGINA, TACIANA
MUKANGAMIJE, ANAISE UMUBYEYI
KANIMBA, AIMEE-LYS
RUSESABAGINA, CARINE ISERE
KANIMBA, AIME-DIANE
RUSESABAGINA, TRESOR
RUSESABAGINA, AND ROGER
RUSESABAGINA,**
*PLAINTIFFS-APPELLANTS*

V.

**GAINJET AVIATION, S.A.,**
*DEFENDANT-APPELLEE*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
Civil Action No. 5:20-1422

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

STEVE D. SHADOWEN
HILLIARD SHADOWEN LLP
1717 W. Sixth Street, Suite 290
Austin, Texas 78703
Telephone: (835) 344-3298
***ATTORNEY OF RECORD FOR APPELLANTS***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.     GAINJET'S *CALDER* ARGUMENT DEPENDS ON DENYING
       PLAINTIFFS' WELL PLEADED AND SUPPORTED
       ALLEGATIONS. ............................................................................................ 3

       A.     Plaintiffs' Allegations and Evidence Show that GainJet
              Committed to the False Flight Information at the Outset. ....................... 3

       B.     Plaintiffs' Allegations and Evidence Show Other GainJet
              Contacts with Texas Related to the Torts. ............................................ 8

II.    TEXAS HAS JURISDICTION UNDER THE *CALDER* EFFECTS
       TEST. ....................................................................................................... 11

III.   TEXAS HAS JURISDICTION UNDER CONSPIRACY
       PRINCIPLES. ............................................................................................. 18

IV.    THE COURT HAS SUBJECT MATTER JURISDICTION. ............................ 23

CONCLUSION .................................................................................................... 26

CERTIFICATE OF SERVICE ................................................................................ 28

CERTIFICATE OF COMPLIANCE ........................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of California*,
1 F.4th 346 (5th Cir. 2021) ................................................................. 3

*Calder v. Jones*,
465 U.S. 783 (1984) ................................................................. 11, 16

*Campbell Pet Co. v. Miale*,
542 F.3d 879 (Fed. Cir. 2008) ................................................................. 7

*Celanese Corp. v. Martin K. Eby Const. Co.*,
620 F.3d 529 (5th Cir. 2010) ................................................................. 6

*Chow v. United States*,
2021 WL 3438365 (5th Cir. 2021) ................................................................. 18, 19

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
24 F.4th 491 (5th Cir. 2022) ................................................................. 11

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ................................................................. 8, 11, 16

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
479 F. Supp. 2d 30 (D.D.C. 2007) ................................................................. 22

*Fielding v. Hubert Burda Media, Inc.*,
415 F.3d 419 (5th Cir. 2005) ................................................................. 14

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ................................................................. 11

*Guidry v. United States Tobacco Co., Inc.*,
188 F.3d 619 (5th Cir.1999) ................................................................. 13, 18

*Hardy v. Scandinavian Airlines Sys.*,
117 F.4th 252 (5th Cir. 2024) ................................................................. 6

*Head v. Las Vegas Sands, LLC*,
298 F. Supp. 3d 963 (S.D. Tex. 2018) ................................................................. 7

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
956 F.3d 341 (5th Cir. 2020) ................................................................. 6

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*,
325 F.3d 586 (5th Cir. 2003) ................................................................. 3, 5

*J & M Assocs., Inc. v. Romero*,
488 F. App'x 373 (11th Cir. 2012) ................................................................. 20

*Jeanty v. Big Bubba's Bail Bonds*,
72 F.4th 116 (5th Cir. 2023) ................................................................. 13

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018) ................................................................. 24

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,*
  115 F.3d 1020 (D.C. Cir. 1997)........................................................19, 20
*Kansas v. Johnson,*
  2002 WL 35657499 (Kan. Ct. App. Oct. 4, 2002) .........................13
*Keeton v. Hustler Magazine, Inc.*
  465 U.S. 770 (1984) .............................................................................14
*Kiobel v. Royal Dutch Petroleum Co.,*
  569 U.S. 108 (2013) .............................................................................24
*McLaughlin v. Mississippi Power Co.,*
  376 F.3d 344 (5th Cir. 2004) ............................................................23
*McNamara v. Nevada,*
  377 P.3d 106 (Nev. 2016)...................................................................13
*Melea, Ltd. v. Jawer SA,*
  511 F.3d 1060 (10th Cir. 2007) .......................................................20
*Moncrief Oil Int'l Inc. v. OAO Gazprom,*
  481 F.3d 309 (5th Cir. 2007) ......................................................13, 16
*Newman–Green, Inc. v. Alfonzo–Larrain,*
  490 U.S. 826 (1989) .............................................................................23
*Newsome v. Gallacher,*
  722 F.3d 1257 (10th Cir. 2013) .......................................................20
*Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A.*
  *Institucion de Banca Multiple,*
  92 F.4th 450 (2d Cir. 2024) ...............................................................22
*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
  253 F.3d 865 (5th Cir. 2001) ..............................................................8
*RJR Nabisco, Inc. v. Eur. Cmty.,*
  579 U.S. 325 (2016) .............................................................................24
*Rusesabagina v. Republic of Rwanda,*
  2023 WL 2562692 (D.D.C. March 16, 2023) .................................21
*Ruston Gas Turbines, Inc. v. Donaldson Co.,*
  9 F.3d 415 (5th Cir.1993) .....................................................................3
*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC (Schwab II),*
  22 F.4th 103 (2d Cir. 2021) .........................................................19, 20
*Sentry Ins. v. Morgan,*
  101 F.4th 396 (5th Cir. 2024) ...........................................................25
*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter,*
  607 F.3d 1029 (5th Cir. 2010) ....................................................13, 16
*Sosa v. Alvarez-Machain,*
  542 U.S. 692 (2004) .............................................................................24
*Tennessee v. Legg,*
  9 S.W.3d 111 (Tenn. 1999) ................................................................13

*Texas v. Volkswagen AG*,
  669 S.W.3d 399 (Tex. 2023) ..................................................................14
*Textor v. Bd. of Regents of N. Illinois Univ.*,
  711 F.2d 1387 (7th Cir. 1983) .........................................................19, 20
*Thomas v. Kadish*,
  748 F.2d 276 (5th Cir. 1984) ................................................................18
*United States v. Jiminez-Garcia*,
  951 F.3d 704 (5th Cir. 2020) ................................................................25
*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) ...............................................................................13
*Unspam Techs., Inc. v. Chernuk*,
  716 F.3d 322 (4th Cir. 2013) ...........................................................19, 20
*Walden v. Fiore*,
  571 U.S. 277 (2014) .....................................................................7, 11, 15
*Wien Air Alaska, Inc. v. Brandt*,
  195 F.3d 208 (5th Cir. 1999) ................................................................17
*Woods v. Legend Oaks Healthcare & Rehab.*,
  2019 WL 2288456 (W.D. Tex. May 29, 2019) .....................................16
*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ..............................................................14
*Youming Jin v. Ministry of State Sec.*,
  335 F. Supp. 2d 72 (D.D.C. 2004) .......................................................22

**Statutes**
28 U.S.C. § 1350 ...........................................................................................24

**Treatises**
James Wm. Moore et al., Moore's Federal Practice (3d ed. 2019) ............17

# **INTRODUCTION**

At the outset of this kidnapping scheme, GainJet committed to tell Mr. Rusesabagina that it would transport him from Dubai to Burundi, not Rwanda. GainJet knew and intended that its intermediary, Constantin Niyumwongere, would relay this false flight information to Mr. Rusesabagina, which he did—using it to lure Mr. Rusesabagina from his San Antonio home.

On these facts, GainJet cannot possibly avoid personal jurisidiction in Texas. So it takes two extreme and unsupportable tacks on appeal.

First, GainJet denies the key allegations for which Plaintiffs produced substantial evidence below. Those denials are improper. Plaintiffs are entitled to have all well pleaded and supported allegations construed in their favor, and to have the benefit of all reasonable inferences from those facts. So on this de novo appeal the Court accepts as true Plaintiffs' allegations and evidence that the GainJet pilot and flight attendant in Dubai lied to Mr. Rusesabagina that the flight was destined for Burundi. Plaintiffs are also entitled to a reasonable inference from those facts— that GainJet had committed at the outset of this scheme to provide that false flight information, knowing and intending that Niyumwongere would communicate it to Mr. Rusesabagina.

Second, GainJet founds its legal analysis on its improper denial of these facts. For example, its *Calder* analysis proceeds on the legal premise that GainJet did not

commit any torts in Texas. But that legal conclusion is based on the improper denial of the facts that the pilot and attendant lied to Mr. Rusesabagina and the consequent inference that GainJet committed to the false flight information at the outset, knowing and intending that Niyumwongere would communicate it to Mr. Rusesabagina.

Even without the benefit of reasonable inferences, and wholly apart from *Calder*, Plaintiffs' evidence is plainly sufficient to establish personal jurisdiction under a conspiracy theory. GainJet does not deny that a contrary ruling would create a Circuit split. Nor did GainJet muster any citations for its novel assertion that conspiracy jurisdiction is available only if plaintiff sues the coconspirators—no such authority exists.

GainJet cannot defeat this appeal by asserting lack of subject matter jurisdiction. The district court has not yet ruled on those issues, and they involve matters left to that court's discretion, such as ruling on Plaintiffs' pending request to amend the Complaint to dismiss any plaintiffs whose presence negates diversity jurisdiction.

## ARGUMENT

I. **GAINJET'S *CALDER* ARGUMENT DEPENDS ON DENYING PLAINTIFFS' WELL PLEADED AND SUPPORTED ALLEGATIONS.**

    A. **Plaintiffs' Allegations and Evidence Show that GainJet Committed to the False Flight Information at the Outset.**

The fundamental premise of GainJet's opposition brief is its factual contention that, until after Mr. Rusesabagina was arrested in Rwanda, it was wholly unaware that he thought the GainJet flight was destined for Burundi. It contends that it had no relevant Texas contacts because, although it played a central role in an international kidnapping, it did so entirely unknowingly. Opp.Br.24, 40.

But on this Rule 12(b)(2) motion, decided without an evidentiary hearing, the Court accepts Plaintiffs' well pleaded allegations and supporting evidence and draws all reasonable inferences in their favor. *See*, *e.g.*, *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 352 (5th Cir. 2021); *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 591 n.9 (5th Cir. 2003); *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir. 1993). Here those facts and inferences are straightforward: at the outset of this kidnapping scheme, GainJet agreed to provide the false flight information to Mr. Rusesabagina—that the flight was going to Burundi—knowing and intending that it would be communicated to him well in advance of the GainJet

flight. ROA.267-68. Niyomwungere then in fact communicated it to Mr. Rusesabagina in Texas. ROA.267-68.

The very nature of the kidnapping scheme raises a reasonable inference that GainJet agreed at the outset to provide the false flight information to be transmitted, via intermediary, to Mr. Rusesabagina. Kagame and Rwanda would not have risked the success of this elaborate plot on the mere hope that Mr. Rusesabagina would never ask a GainJet employee about the destination. ROA.865. The plot's success depended on GainJet's cooperation from the very beginning.

That conclusion is profoundly solidified by the fact that GainJet's pilot and flight attendant directly lied to Mr. Rusesabagina in Dubai that the flight was headed for Burundi. Plaintiffs' Complaint identifies the GainJet employees by name and alleges that "[w]hen Mr. Rusesabagina asked them to confirm that their destination was Burundi, both Alexandre and Alice represented to him on two separate occasions that the flight's destination was Burundi." ROA.253. Mr. Rusesabagina was in the Rwandan prison at the time, but Plaintiffs supplemented the Complaint as soon as they were able, with evidence from Mr. Rusesabagina himself:[1]

- "I talked to the pilots personally. …. He told me: 'we are going to Burundi.' I knew then that we were heading to Bujumbura." ROA.799.

---

[1] Mr. Rusesabagina's Rwandan counsel recorded an interview with him in April 2021 when he was in prison in Rwanda. ROA.795-96. Plaintiffs' U.S. counsel expressly brought the lawyer's affidavit and transcript to GainJet's and the district court's attention. ROA.789.

- "Then I asked him, 'how many hours does it take from here to Bujumbura?' He told me that it could take around three hours and a half." ROA.799.

- "When I got into the aircraft I found therein a stewardess…. Then I said: 'well Alice where are we heading to?' She answered me that we were heading to Bujumbura." ROA.799-800.

- "[I]t was them, both Captain Alexandre and stewardess Alice, who told me: 'we are going to Bujumbura.' There is therefore no doubt, it was them who told me that." ROA.800.

These events *in Dubai* confirm GainJet's contacts *with Texas*. Niyomwungere told Mr. Rusesabagina *when he was in Texas* that the GainJet flight would take him to Burundi. GainJet agreed to provide false flight information to Mr. Rusesabagina, and its pilot and attendant did so directly to him in Dubai. It beggars belief that Niyomwungere provided that false information to Mr. Rusesabagina in Texas just hoping that GainJet would *later* agree to it. No. Kagame needed GainJet's agreement to give Mr. Rusesabagina the false flight information. Kagame got that agreement, as proved by GainJet's onboard lies. He did not set an elaborate international kidnapping scheme in motion and just hope that he would secure GainJet's agreement later. GainJet's onboard employees misrepresented the destination to Mr. Rusesabagina. So the reasonable inference—assuredly *a* reasonable inference, which is all that is required—is that GainJet was in on it from the beginning. *See, e.g.*, *ICEE Distributors,* 325 F.3d at 591 n.9 (plaintiff entitled to "any choice of reasonable inferences").

GainJet does not deny that the evidence that it lied to Mr. Rusesabagina onboard the plane, if credited, permits a reasonable inference that GainJet agreed to the false flight information at the outset. Instead, its only response is a flat denial of the underlying facts that its pilot and attendant lied to Mr. Rusesabagina on the plane. At this procedural stage, that denial fails.

GainJet asserts that Plaintiffs' allegations about the onboard lies "misinterpret" Niyomwungere's alleged testimony at Mr. Rusesabagina's sham trial in Rwanda. Opp.Br.21-22. But Plaintiffs never cited or relied on the purported testimony that Niyomwungere "distracted" Mr. Rusesabagina from hearing the true destination.[2] Instead, Plaintiffs *contradicted* it with the direct evidence from Mr. Rusesabagina himself, discussed above.

GainJet argues—for the first time on appeal—that the district court should not have credited Plaintiffs' contrary allegation and supporting evidence because Mr. Rusesabagina did not sign an affidavit and the prison interview was conducted in two languages. Opp.Br.30&n.13. But GainJet never argued below that Plaintiffs' allegation in the Complaint about the onboard events was unsupported by evidence. GainJet waived any evidentiary objection and cannot raise it now on appeal. *See, e.g.*, *Celanese Corp. v. Martin K. Eby Const. Co.*, 620 F.3d 529, 531 (5th Cir. 2010)

---

[2] According to a YouTube video cited by Defendants (Opp.Br.22), Niyumwongere purportedly testified at the Rwandan trial that he had "distracted" Mr. Rusesabagina when GainJet employees discussed flying to Rwanda. This video is not part of the record on appeal.

("Arguments not raised before the district court are waived and will not be considered on appeal."); *Hardy v. Scandinavian Airlines Sys.*, 117 F.4th 252, 262 n.22 (5th Cir. 2024) (same); *Hewitt v. Helix Energy Sols. Grp., Inc.*, 956 F.3d 341, 344 n.3 (5th Cir. 2020) (same).[3] In any event, Plaintiffs were entitled to support their allegations with documents and other materials regardless of whether they met the rules of evidence. *See, e.g.*, *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 968 (S.D. Tex. 2018) ("[T]he general rules of evidence concerning admissibility (*e.g.*, the rule against hearsay etc.) do not apply in the Rule 12(b)(2) context."), *aff'd on other grounds*, 760 F. App'x 281 (5th Cir. 2019); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008) ("We need not address [defendant]'s hearsay objection at this stage . . . because this appeal merely requires that we address whether the uncontroverted facts alleged by [plaintiff] in its affidavits and complaint support a prima facie showing that the district court had personal jurisdiction over the defendants.").

---

[3]Mr. Rusesabagina was in a Rwandan prison when he made the statements and was not permitted to sign any affidavits. ROA. 795-797. His out-of-court statements are at least as reliable as those of Niyomwungere, on which GainJet relies. The latter were made only after Plaintiffs initiated this litigation and lack a certified translation or any attestation confirming the video's accuracy. It is unclear whether the video and audio even reflect the original proceedings or are dubbed. Notably, after Mr. Rusesabagina returned to the United States, his U.S. counsel informed the district court that if necessary Mr. Rusesabagina would re-confirm the accuracy of his prior statements. ROA.1231.

**B. Plaintiffs' Allegations and Evidence Show Other GainJet Contacts with Texas Related to the Torts.**

Nor does GainJet undermine the evidence, from its own affidavits, that it elicited and received Mr. Rusesabagina's passport information from him "two to three days prior to the flight"—*while he was in Texas*. ROA.309; ROA.553. This GainJet contact with the forum was essential to the fraud and kidnapping. P.Br.14. That GainJet may have received the passport information via an intermediary is irrelevant. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (relevant contacts are those "by the defendant in person or through an agent, goods, mail, or some other means"); *Def. Distributed v. Grewal*, 971 F.3d 485, 495 (5th Cir. 2020) (quoting *Walden*).

It does not matter that GainJet's corporate representative, once he realized the significance of the timing (that Mr. Rusesabagina was still in Texas "two to three days prior to the flight"), contradicted his own prior affidavits and asserted at deposition that GainJet received the information only a few hours before the flight. *See* Opp.Br.20. Plaintiffs are entitled to rely on GainJet's earlier affidavits. *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) ("[we] resolve all controverted allegations in the plaintiff's favor").

GainJet's onboard lies to Mr. Rusesabagina give a different cast to much of the other facts and circumstances. For example, GainJet's only explanation for not conducting an investigation into its role in this international kidnapping is the

assertion that the flight was "normal" so there was nothing to investigate. ROA.625. *See* Opp.Br.7 & n.4 (contending that Rule 30(b)(6) deponent "had no need to prepare to answer questions" on the issue of "whether there was 'foul play' during the flight"). Plaintiffs' evidence is that GainJet did lie to Mr. Rusesabagina onboard the flight, so the only explanation for GainJet's failure to conduct an investigation is that it already knew all the details of the kidnapping. P.Br.17.

GainJet says that it had "no contacts" and "zero contacts with Texas." Opp.Br.24, 40. GainJet falsely stated under oath below that it had never flown into Texas. ROA.307. But Plaintiffs proved that, just a few weeks after the flight at issue here, GainJet brought Rwanda's *head of state* to Houston. ROA.492. GainJet was then forced to retract its false representation to the district court. ROA.550. The misrepresentation now reappears in GainJet's appellate brief.

GainJet protests that Plaintiffs' assertions about the destruction of the ground manager's phone are "spurious" because "GainJet *produced* the WhatsApp messages with information sent by the Rwandan government to GainJet." Op.Br.17&n.9 (emphasis in original). GainJet's assertion about its production is false. What GainJet produced was one WhatsApp message from the dispatcher, forwarding the passengers' passport photos to GainJet's CEO, because he asked to see them prior to his deposition. ROA.649. Contrary to GainJet's representation in its brief, that document contains no indication that the passport photos were "sent by

the Rwandan government." ROA.649-651. In fact, the message as produced reflects no information about who sent the original passport photos or when they were sent. And GainJet admits that it cannot produce the original WhatsApp messages sending copies of the passports "because the [ground manager's] mobile was damaged and she replaced it." ROA.649.

GainJet's refusal to credit and construe the facts in Plaintiffs' favor on this motion is illustrated by the facts surrounding the plane's arrival in Kigali. Rwandan agents boarded the plane and blindfolded, gagged, and hogtied Mr. Rusesabagina, while the pilot and crew ignored his cries for help. Plaintiffs alleged and produced evidence of these shocking events. P.Br.16. GainJet's description of them? "Mr. Rusesabagina … deplaned the GainJet aircraft in Kigali." Opp.Br.20.

GainJet's obfuscations are compounded by its repeated breach of regulations and its own protocols regarding flight requirements and documentation. GainJet left its aircraft sitting on the Dubai tarmac for nine days, awaiting Mr. Rusesabagina's arrival from Texas;[4] violated its charter protocols for issuing passenger travel documents and collecting passenger passport information; changed its departure date several times before the Dubai-Kigali flight; changed its flight crew without

---

[4] Yet GainJet would have this Court accept that, during all this time, GainJet somehow remained unaware of who the passenger was or where he was arriving from.

reflecting the change in the flight manifest; and did not list the passenger names in the manifest. P.Br.14.

All these anomalies further strengthen the inference from GainJet's pilot and attendant directly lying to Mr. Rusesabagina about the flight's destination: GainJet committed to the false flight information at the outset of the scheme, knowing and intending that it would be communicated to Mr. Rusesabagina when he was still in the safety of his home in San Antonio. GainJet notes that the district court refused to draw this inference. Opp.Br.29. But we know from GainJet's onboard lies that it had committed to provide the false flight information. The question is *when*. It only makes sense that GainJet committed at the outset of the scheme, not at the last moment. On this de novo appeal, the Court should give Plaintiffs the benefit of the inference from the nature of the scheme and from the fact that GainJet in fact lied to Mr. Rusesabagina about the destination.

## II.  TEXAS HAS JURISDICTION UNDER THE *CALDER* EFFECTS TEST.

Despite GainJet's suggestions to the contrary (*see* Opp.Br.33-35), the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), was not overturned or undermined by *Walden v. Fiore*, 571 U.S. 277 (2014). "*Walden* makes clear that *Calder* remains good law." *Def. Distributed*, 971 F.3d at 495; *see also Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 496 (5th

Cir. 2022) ("*Walden* clarified and elaborated on *Calder*'s holding" rather than overturn it).[5]

Plaintiffs demonstrated that jurisdiction exists under *Calder* because: (1) GainJet committed intentional torts against Mr. Rusesabagina in Texas; (2) GainJet aimed those torts at him when he was a lawful Texas resident; (3) the torts injured him in Texas; and (4) GainJet's torts infringed the sovereign interests of Texas itself. P.Br.24-27.

GainJet has no meaningful response. Its arguments hinge on the factual assertion that it did not commit to provide the false flight information that was in fact communicated to Mr. Rusesabagina in Texas. Opp.Br.29, 36. As demonstrated above, however, Plaintiffs' well pleaded and well supported allegations are that GainJet from the outset committed to the false flight information and knew and intended that it would be transmitted to its passenger, Mr. Rusesabagina. There is no point in concocting false flight information if it is *not* going to be transmitted to the passenger.

In *Calder*, it was irrelevant that someone other than the defendant writers themselves physically transmitted the tortious communication into the forum; they

---

[5] GainJet also errs in citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357 (2021), for theproposition that the plaintiff's claim must *arise out of* the defendant's forum contacts rather than merely *relate to* them. *See* Opp.Br.39, 40. *Ford* expressly *rejected* that proposition. Moreover, personal jurisdiction exists here, just as it did in *Ford*, because the defendant could have "'structure[d] [its] primary conduct' to lessen or even avoid the costs of state-court litigation." *Id.* at 368 (citation omitted). *See* P.Br.27.

knew and intended that it would be transmitted to where it would affect the plaintiff. P.Br.24-25. Just so here. It is irrelevant whether Niyomwungere, rather than GainJet itself, directly communicated the false information to Mr. Rusesabagina in Texas.

Nor is there any doubt that GainJet's torts of fraud and false imprisonment occurred in Texas. Its misrepresentation that the flight's destination was Burundi (ROA.251; ROA.829) was: (a) material because Mr. Rusesabagina otherwise would not have left Texas (ROA. 829); (b) known by GainJet to be false when made (ROA.199; ROA.253); (c) made with the specific intent that Mr. Rusesabagina would rely on it (ROA.198; ROA.267); (d) in fact relied on by him in Texas (ROA.251-52); and (e) the cause of his injury in Texas (ROA.873). So GainJet's tort of fraud occurred in Texas. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (listing these elements). So did its tort of false imprisonment.[6]

Under *Calder*, committing an intentional tort in Texas satisfies the minimum contacts for personal jurisdiction. "'When a nonresident defendant commits a tort

---

[6] "Under Texas law, the elements of a false imprisonment claim are: (1) willful detention; (2) without consent; and (3) without authority of law." *Jeanty v. Big Bubba's Bail Bonds*, 72 F.4th 116, 119 (5th Cir. 2023). Notably, kidnapping "[i]s committed in all of the places that any part of it took place," *United States v. Rodriguez-Moreno*, 526 U.S. 275, 276 (1999), including the place from which the victim was tricked into leaving, *Kansas v. Johnson*, 2002 WL 35657499, at *2 (Kan. Ct. App. Oct. 4, 2002); *Tennessee v. Legg*, 9 S.W.3d 111, 116 (Tenn. 1999); *McNamara v. Nevada*, 377 P.3d 106, 113 (Nev. 2016). The false imprisonment occurred when Mr. Rusesabagina boarded the plane in San Antonio: he was leaving against his will, based on the false pretense that his destination was Burundi.

within the state ... that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state ... to exercise personal adjudicative jurisdiction.'" *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (quoting *Guidry v. United States Tobacco Co., Inc.,* 188 F.3d 619, 628 (5th Cir.1999)). *See* P.Br.21, 31, 35, 43.

GainJet argues that it did not expressly aim the torts at Texas. Opp.Br.36. But GainJet aimed the torts *at Mr. Rusesabagina*, and he was a Texas resident and physically located there, and that is sufficient. P.Br.24-26. Regardless, the facts, construed favorably to Plaintiffs, establish that GainJet did know that Mr. Rusesabagina was in Texas. Among other facts, GainJet procured his passport information from him when he was there. P.Br.30. And Plaintiffs cited a mountain of authority, including from this Court, establishing that an intentional tortfeasor who directs the tort at a particular person without (purportedly) knowing where he is, essentially "assumes the risk" of being sued wherever in fact the victim is located and is injured. P.Br.20. GainJet wholly fails to address this line of cases, because it has no answer to it.

These jurisdictional contacts suffice even if, as GainJet insists (Opp.Br.37-38) Mr. Rusesabagina was injured as badly or worse when GainJet and others committed additional torts against him abroad. GainJet cites *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 425 (5th Cir. 2005), but there the Court concluded that only

"sufficient harm," *not* "the bulk of the effects" need be felt in the forum. Instead, "conduct directed at other jurisdictions does not negate . . . purposeful availment of this one." *Texas v. Volkswagen AG,* 669 S.W.3d 399, 420 (Tex. 2023); *see also Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 780 (1984) (jurisdiction was proper even though it was "undoubtedly true that the bulk of the harm done to petitioner occurred outside [the forum]"); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1207 (9th Cir. 2006) ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.").

GainJet says this case is like *Walden*, where defendant committed the tort in Georgia, and plaintiff just happened to live in Nevada and incurred some of the injury there. Opp.Br.35. Again, however, that argument relies on the false factual premise that GainJet did not commit torts in Texas. Plaintiffs' well pleaded and well supported allegations are that GainJet committed fraud and false imprisonment in Texas when Niyomwungere communicated GainJet's false flight information to Mr. Rusesabagina there.

So this case exactly fits *Calder*'s key elements, as elucidated in *Walden*. "[P]ublication to third persons is a necessary element of libel," so in *Calder* the "intentional tort actually occurred in California." *Walden*, 571 U.S. at 288. "In this way, the 'effects' caused by the defendants' article—i.e., the injury to the plaintiff's

reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there." *Id*. This was the "crux" of *Calder. Id.* at 287. Thus, a plaintiff's suffering an injury in the forum may not be sufficient alone to establish jurisdiction over the defendant (*id*. at 289-90), but defendant's committing a tort in the forum certainly is (*id*. at 288). And, notably, the defendant writers did not themselves send the offending article into California; the publisher did.

Here, GainJet committed at the outset to the false flight information, knowing and intending that it would be communicated to the passenger. Niyomwungere then communicated it to Mr. Rusesabagina in Texas. GainJet's torts of fraud and false imprisonment were not complete until its fraudulent flight information was communicated to Mr. Rusesabagina in Texas. *See Shandong,* 607 F.3d at 1032–33 (reliance on the false statement is an element of fraud); *Woods v. Legend Oaks Healthcare & Rehab.*, 2019 WL 2288456, at *4 (W.D. Tex. May 29, 2019) (detention is an element of false imprisonment).[7]

The torts' connection to the forum here is even more robust than in *Calder*. Texas itself has a substantial interest in GainJet's torts. Texas has a sovereign interest

---

[7] GainJet quotes *Moncrief* to the effect that forum contacts are not sufficient "where the only jurisdictional basis is the alleged harm to a Texas resident." Opp.Br.37-38. Those are not the facts here. The facts here instead invoke *Moncrief*'s conclusion that the forum contacts *are* sufficient "[w]hen a nonresident defendant commits a tort within the state." 481 F.3d at 314.

in the physical integrity of its territory and in the shield of legal protections that it provides to lawful residents. P.Br.27, 45.[8] Mr. Rusesabagina, as a political dissident, purposefully chose Texas as an asylum from the Kagame regime. ROA.829. This transnational kidnapping was designed to silence Mr. Rusesabagina and instill fear in all of the Kagame regime's opponents.

This Court recently recognized that communications sent into Texas can "alone g[i]ve rise to distinct tort causes of action" and make jurisdiction reasonable, especially where, as here, the communication will have a "'potentially devastating impact' on the plaintiff" and affect other Texas interests. *Def. Distributed*, 971 F.3d at 495 (citing *Calder*, 465 U.S. at 789). Here, Texas's bipartisan Congressional delegation recognized the kidnapping's *public effect in Texas*. And the U.S. Executive's actions in ultimately securing Mr. Rusesabagina's release confirmed the interests of and injuries to the entire nation. ROA.876. GainJet has not denied— cannot deny—that the torts not only injured Mr. Rusesabagina but also invaded the sovereign interests of Texas and the United States.

Contrary to GainJet's contention (Opp.Br.28), committing these torts in Texas also satisfies the "purposeful availment" element. *See, e.g.*, *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of

---

[8] *See also* ROA.868 ("GainJet's conduct was designed to thwart the laws of Texas that provided protection to him.").

communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); 16 James Wm. Moore et al., Moore's Federal Practice § 108.42[3][a], at 108-70 (3d ed. 2019) ("Generally, the commission of an intentional tort in a forum state is a purposeful act that will satisfy the purposeful availment prong.").

## III.   TEXAS HAS JURISDICTION UNDER CONSPIRACY PRINCIPLES.

If it were necessary, Plaintiffs have also established personal jurisdiction based on GainJet's participation in a conspiracy whose specific object was to kidnap Mr. Rusesabagina from Texas.

In addition to *Delta Brands*, which Plaintiffs have addressed in detail (P.Br.39-40), GainJet cites three cases for the proposition that this Court does not recognize conspiracy jurisdiction. Opp.Br.43 (citing *Chow v. United States*, 2021 WL 3438365 (5th Cir. 2021), *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir. 1999), and *Thomas v. Kadish*, 748 F.2d 276 (5th Cir. 1984)).

*Guidry* expressly *declined* to make the holding for which GainJet cites the case. P.Br.40. The Court there also took pains to correct the district court's reliance on *Thomas v. Kadish* as "control[ling]" on the issue of conspiracy jurisdiction, noting that "*Thomas v. Kadish* is a simple case in which the complaint was devoid of factual allegations," and "[t]he plaintiff alleged no background facts whatsoever in support of his bare allegations of two very unlikely conspiracies." *Guidry*, 188

F.3d at 632-633. By contrast, "the Guidrys' allegations, depositions and exhibits present a considerable amount of detailed information in support of a less farfetched conspiracy scenario," and "[c]onsequently," the district court's decision on remand could not be "readily controlled by the easier no-factual allegation case of *Thomas v. Kadish*." *Id.* at 633.

This distinction as to *Thomas v. Kadish* is equally true as to *Chow v. United States*, in which two pro se plaintiffs alleged a "wide-ranging civil conspiracy" among the United States, Alaska, California, and various other parties to "commit treason and deprive the Chows of their constitutional rights." 2021 WL 3438365, at *1. The Court declined to permit the Chows' appeal to proceed because they could not demonstrate that any of the issues they wished to raise, including personal jurisdiction, would be "nonfrivolous." *Id.* at *2-3.[9]

Here, in contrast, the district court expressly "agree[d] with Plaintiffs that much of the jurisdictional evidence suggests that GainJet was aware of or agreed to participate in the kidnapping." ROA.1157.

In these circumstances, widely accepted principles determine whether personal jurisdiction exists based on the conspiracy's contacts with the forum.

---

[9] In a brief discussion of the Chows' civil conspiracy allegations, *Chow* cites *Kadish*, but not *Guidry*, in rejectingthe proposition that "personal jurisdiction over one defendant conspirator [would be] sufficient to establish personal jurisdiction over a nonresident coconspirator." 2021 WL 3438365, at *2. As discussed further *infra*, the standard requirements for conspiracy jurisdiction in other circuits are far more robust than the simplistic assertion made by the plaintiffs and rejected in *Chow*.

GainJet does not deny that this Court would create a circuit split by rejecting that test here. *See* Opp.Br.42.

The courts agree that the allegations of conspiracy must be substantial. *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC (Schwab II)*, 22 F.4th 103, 122 (2d Cir. 2021) (allegations of conspiracy must be "plausibly allege[d]"); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (claim of conspiracy must be "plausible" and rely on more than "bare allegations"); *Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387, 1392–93 (7th Cir. 1983) (allegations of conspiracy must be "actionable"); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1031 (D.C. Cir. 1997) (conspiracy must be pleaded "with particularity"); *J & M Assocs., Inc. v. Romero*, 488 F. App'x 373, 375 (11th Cir. 2012) (same).

In addition, the plaintiff must show "overt acts within the forum taken in furtherance of the conspiracy." *Jungquist*, 115 F.3d at 1031; *Unspam*, 716 F.3d at 329; *Textor,* 711 F.2d at 1393; *Schwab II*, 22 F.4th at 122; *Melea, Ltd. v. Jawer SA,* 511 F.3d 1060, 1070 (10th Cir. 2007). The Second Circuit articulates this last requirement slightly differently, concluding that all conspirators are subject to jurisdiction in the forum so long as one of them committed "overt acts" in the forum that would subject that coconspirator to jurisdiction. *See* P.Br.42 (citing *Schwab II, supra*). The test's import, however, is the same: there must be a conspiracy, and

when the conspiracy as a whole has directed its activities to the forum, then all coconspirators can reasonably be haled into court in the forum.

The Seventh Circuit notes that this test embodies the "time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Textor*, 711 F.2d at 1392 (collecting cases). The Tenth Circuit also describes a common sense rationale for this type of jurisdictional analysis, stating: "If three Kansans conspired to fire a cannonball into Oklahoma, we do not believe the Constitution would foreclose Oklahoma courts from exercising jurisdiction over the conspirators simply because they confined themselves to Kansas." *Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013).

On the facts, the district court agreed that Plaintiffs had met these elements. First, the district court accepted that there was a "conspiracy to kidnap Mr. Rusesabagina" from his home in Texas, which GainJet "may have been both aware of and a willing participant in," and assumed for purposes of its analysis that Mr. Rusesabagina may have been injured "the moment he was lured from his home in San Antonio." ROA.1150; ROA.1157. On the second element, the district court credited Plaintiffs' allegations that he was targeted in Texas by members of the conspiracy who convinced him through fraud and subterfuge to leave San Antonio. ROA.1147-49. Whether GainJet lit the match for the cannonball, pulled the lever to release it, or merely towed the cannon to the right spot, the result is the same: GainJet

can and should be haled into court in Texas to answer for the injuries to Mr. Rusesabagina.

So GainJet takes an even more extreme position on appeal, arguing that Plaintiffs must actually sue GainJet's coconspirators. Opp.Br.44. GainJet cites no case for its proposed rule, and it would contradict clear statements in other cases analyzing the contacts of alleged non-party coconspirators for purposes of conspiracy jurisdiction. *See, e.g., Rusesabagina v. Republic of Rwanda*, 2023 WL 2562692, *7 (D.D.C. March 16, 2023) (finding minimum contacts with the United States under Fed. R. Civ. P. 4(k)(2) based on the named defendants' participation in a conspiracy with Niyomwungere, who was not named as a party in the D.C. action); *Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institucion de Banca Multiple*, 92 F.4th 450, 456-457 (2d Cir. 2024) (applying *Schwab II* to find jurisdiction in New York based on the foreign named defendants' conspiracy with non-party brokers in New York, noting that "this layer of separation" does not "insulate" the defendants from jurisdiction); *see also FC Inv. Grp. LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30, 42 (D.D.C. 2007) ("Only if this Court could have exercised long-arm jurisdiction over that co-conspirator (had that co-conspirator been sued), will it be able to reach IFX through the alleged conspiracy."); *Youming Jin v. Ministry of State Sec.,* 335 F. Supp. 2d 72, 83 (D.D.C. 2004) (analyzing conspiracy jurisdiction as to unnamed alleged co-conspirators).

Nor is there any question that the conspirators lured Mr. Rusesabagina out of Texas. He did not appear in Dubai ex nihilo. The Complaint alleges that "Niyomwungere contacted Mr. Rusesabagina at his home in San Antonio, Texas and invited him to speak at churches in Burundi about the Rwandan genocide and Hotel Rwanda" (ROA.251); Niyomwungere was working on behalf of Kagame and Rwanda (ROA.252); Rwandan agents surveilled him in Texas (ROA. 249-50); and the conspirators "fabricated the existence of an important meeting with prominent church leaders, so as to entice Mr. Rusesabagina to travel to Dubai and, they falsely led him to believe, on to Burundi." ROA.267. Mr. Rusesabagina directly affirmed the essential facts from his prison cell. ROA.796-806. This sustained series of contacts with Mr. Rusesabagina "at his home in San Antonio, Texas" is sufficient to make out a prima facie case for jurisdiction against the conspirators. *See* Opp.Br.34-36 & n.6 (collecting cases).

## IV.   THE COURT HAS SUBJECT MATTER JURISDICTION.

The district court has not yet ruled on the subject matter jurisdiction issues that GainJet glancingly raises. Opp.Br.47-49. The issues are not ripe for this Court's review.

Below, Plaintiffs requested permission to cure any deficiency regarding diversity jurisdiction. ROA.418-19. A court may dismiss nondiverse parties to cure any such defect. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989)

("Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."); *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 354 (5th Cir. 2004) ("Rule 21 gives us the power to dismiss misjoined parties."). The district court has not yet ruled on Plaintiffs' request to cure any defect in diversity jurisdiction, so GainJet's arguments to this Court are premature.

Nor has the district court addressed Plaintiffs' alternative argument that subject matter jurisdiction exists under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), which provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. All but two of the Plaintiffs are "aliens" within the meaning of the ATS. *See, e.g., Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 113 (2013) (permitting claim by lawful permanent residents).

Plaintiffs' claims arise under the tort law of Texas, and those torts were also "committed in violation of" international law. *See* ROA.201. The ATS thus provides jurisdiction to adjudicate these Texas tort claims.

GainJet notes that the Supreme Court has refused to fashion certain federal common law claims that plaintiffs might bring under the jurisdiction that the ATS provides. GainJet thereby commits the error that the Supreme Court has repeatedly

warned against—conflating the *jurisdiction* that the ATS provides with whether federal courts should create *substantive liability standards* as federal common law.[10] Plaintiffs do not ask the Court to craft federal common law; they invoke only the ATS's unequivocal grant of jurisdiction to enforce hornbook Texas tort law.

The abduction, detention, and torture of Mr. Rusesabagina undeniably violated, among many other international instruments, Articles 2, 6, 7, 9, 12, 13, and 14 of the International Covenant on Civil and Political Rights, Dec. 19, 1966, U.S. Senate Treaty No. 95-20, 1966 U.S.T. LEXIS 521, 999 U.N.T.S. 171. The United States, Greece, and Rwanda are signatories to the Covenant. It is irrelevant whether courts could or should fashion federal common law claims to enforce these applicable norms. Plaintiffs' claims arise under Texas tort law. That GainJet's torts were also committed in violation of international law allows Plaintiffs to invoke the jurisdiction that the ATS unambiguously provides.

As can be seen, the ATS issues will require extensive briefing, if the district court reaches them in light of the alternative of diversity jurisdiction. This Court need not reach them now, and should not reach them without extensive briefing. *See, e.g., Sentry Ins. v. Morgan*, 101 F.4th 396, 399-400 (5th Cir. 2024) (remanding for

---

[10] "The ATS is 'strictly jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for violations of international law." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 254 (2018); *see also RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016) (ATS is "strictly jurisdictional"); *Kiobel*, 569 U.S. at 116 ("The ATS...is 'strictly jurisdictional'" and "does not directly regulate conduct or afford relief"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004) (ATS reflects a clear "distinction between jurisdiction and cause of action").

the district court to consider additional jurisdictional arguments "in the first instance") (collecting cases); *United States v. Jiminez-Garcia*, 951 F.3d 704, 705 (5th Cir. 2020) ("When a district court fails to explicitly decide an issue that weighs on the district court's jurisdiction, the better solution is to remand the case to the district court for determination of the jurisdictional questions rather than dismissing the matter altogether.") (cleaned up, internal citations omitted).

## CONCLUSION

The district court's dismissal for lack of jurisdiction was error, and Plaintiffs respectfully urge this Court to reverse and remand for further proceedings.

Respectfully submitted,

**STEVE D. SHADOWEN**
COUNSEL FOR PLAINTIFFS-APPELLANTS

BY: */s/Steve D. Shadowen*
**STEVE D. SHADOWEN**

Steve D. Shadowen
Tina Miranda
Nicholas W. Shadowen
HILLIARD SHADOWEN LLP
1717 W. Sixth Street,
Suite 290
Austin, Texas 78703
T: (835) 344-3298
steve@hilliardshadowenlaw.com
tmiranda@hilliardshadowenlaw.com

nshadowen@hilliardshadowenlaw.com

Marion M. Reilly
MARTINEZ  REILLY PLLC
636 South Alameda, Ste. B119
Corpus Christi, TX 78411
T: (210) 903-9677
marion@mrtrial.com

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that the foregoing brief was electronically filed on the 18th day of February 2025, using the court's CM/ECF system which will provide a notice of electronic filing to counsel of record.

/s/ Steve D. Shadowen
**STEVE D. SHADOWEN**
Counsel for Plaintiffs-Appellants

**CERTIFICATE OF COMPLIANCE**

Pursuant to 5th Circuit Rule 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5th Circuit Rule 32.2.7(b).

1.  Exclusive of the portions exempted by 5th Circuit Rule 32.2.7(b)(3), this brief contains 6,241 words printed in a proportionally spaced typeface.

2.  This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Microsoft Office Word 2019.


*s/ Steve D. Shadowen*                          February 18, 2025
**Steve D. Shadowen**                               **DATE**
Attorney for Plaintiffs-Appellants